Helen HOUSE et al., Plaintiffs,

v.

MINE SAFETY APPLIANCES COMPANY, a corporation, et al., Defendants.

Sandra NORRIS et al., Plaintiffs,

v.

MINE SAFETY APPLIANCES COMPANY, a corporation, et al., Defendants.

Arjvell E. FOWLER, Plaintiff,

v.

MINE SAFETY APPLIANCES COMPANY, a corporation, et al., Defendants.

SUNSHINE MINING COMPANY, a corporation, Plaintiff,

v.

UNITED STATES of America et al., Defendants.

Anthony Charles Vanier HARDEN et al., Plaintiffs,

v.

UNITED STATES of America et al., Defendants.

Civ. Nos. 1–73–50, 1–74–71, 1–74–70, 2–75–9 and 2–75–24.

United States District Court, D. Idaho.

July 25, 1976.

Jack Orms, Los Angeles, Cal., Mayle & Draper, Salt Lake City, Utah, Charles A. Skow, Chico, Cal., J. Ray Cox, Coeur d'Alene, Idaho, and George Greenfield, McClenahan & Greenfield, Boise, Idaho, for plaintiffs.

Wayne P. Fuller, Caldwell, Idaho, Michael G. Brady, Boise, Idaho, John S. Simko, Boise, Idaho, David L. Gore, Asst. Gen. Counsel, Pittsburgh, Pa., Paul D. Carey, Seattle, Wash., Michael McNichols, Orofino, Idaho, Joseph M. Imhoff, Jr., Boise, Idaho and George H. Cohen, Washington, D. C., for defendants.

## MEMORANDUM DECISION AND ORDER

J. BLAINE ANDERSON, District Judge.

PVO International, Inc. and Polytron Company have filed third-party complaints in the above-entitled consolidated action against the United Steelworkers of America and Local 5039 of the Steelworkers Union. The third-party defendants have moved to dismiss the complaints on the ground of failure to state a claim for which relief can be granted, which the parties have addressed in memoranda and at a hearing held on April 30, 1976. The matter is submitted and the court, being fully advised in the premises, hereinafter renders its Memorandum Decision and Order dismissing the third-party complaints against Local 5039 and the United Steelworkers of America.

The third-party defendants do not contest the fact that the third-party complaints arise from the same common nucleus of facts in the consolidated action. The third-party plaintiffs urge that in the interests of judicial economy and fairness, this court should exercise ancillary jurisdiction. The court finds that jurisdiction exists.

Third-party plaintiffs assert a right of indemnification and contribution from third-party defendants, derived from an alleged right of union members (or personal representatives) to sue the union to which the various members belonged. Any right to file a third-party complaint must rest upon the existence of a right of union members to sue their union. Even though such members or personal representatives may choose not to sue, the third-party plaintiffs may rely upon said right, if it exists, and file a third-party complaint against the union. Initially, therefore, this court must analyze a supposed cause of action by a union member against his union. The third-party complaints state that the third-party defendants undertook a duty to act as accident prevention representatives and safety enforcers under a labor agreement entered into by the third-party defendants and Sunshine Mine for the benefit of union members. It is alleged that the third-party defendants were negligent in allowing unsafe conditions to exist in the mine, in failing to exercise due care for the health and safety of decedent members, and in failing to provide decedents a reasonably safe place to perform their required duties prior to and during the fire which occurred on May 2, 1972. It is further alleged that such negligence was a proximate cause of plaintiffs' damages.

Under federal law a union member may sue his union when the union has breached a duty of "fair representation." Section 301(a), Labor Management Relations Act,

29 U.S.C.A. § 185(a). Third-party plaintiffs do not assert that the unions breached their duty of fair representation; rather, they rely upon an alleged common law tort committed by the unions in negligently performing a duty assumed. The assumed duty allegedly arises from provisions contained in a collective bargaining agreement.[1] In part, because the alleged safety duty is embodied in a collective bargaining agreement and because, traditionally, this area is a matter of federal law, third-party defendants argue that no such common law cause of action exists; rather, they urge that the unions' duty is exclusively that of fair representation.

The Supreme Court of California has permitted suits against unions for negligent maintenance of union property and intentional torts committed by union members at a union meeting. *Marshall v. International Longshoremen's & W. U. Local 6*, 57 Cal.2d

---

[1]. The agreement provides in part:
"
#### ARTICLE IX

*Safety and Health*

1. The Company and the Union will continue to cooperate toward the objective of eliminating accident and health hazards. The Company shall continue to make reasonable provisions for the safety and health of its employees at the plant during the hours of their employment. Protective devices, wearing apparel, and other equipment necessary to protect employees from injury shall be provided by the Company in accordance with practices now prevailing in each separate department or as such practices may be improved from time to time by the Company.

2. An employee who believes that he is being required to work under conditions which are unsafe beyond the normal hazards inherent in the operation in question, may request an immediate meeting with the shift boss, with or without consultation with his Assistant Grievance Committeeman. If, as a result of these actions, the employee still believes he is being required to work under conditions which are unsafe beyond the normal hazards inherent in the operation in question, a committee consisting of two (2) supervisory personnel and two (2) reliable employees, approved by the Union, shall inspect the operation in question within twenty-four (24) hours and shall decide what steps, if any, are necessary to correct the hazard.

In the event the committee cannot agree, the employee involved may then file a grievance in Step 2 of the grievance procedure. It is understood and agreed that if a grievance is filed on an unsafe working condition, management and Union representatives shall give said grievance preferred handling, and shall expedite its movements through the grievance procedure.

The employee may on request, be relieved from the job and be assigned to other work at the discretion of the Company. If an employee exercises his rights under this section and the Company believes conditions are not beyond the normal hazards inherent in the operation in question, nothing contained in this section shall abridge the rights of the Company under other sections of this Agreement.

Neither shall the foregoing preclude the Company from assigning another employee to the job in question and it is further understood that no employee, other than communicating the facts, shall take any steps to prevent another from working on the job.

3. A Safety Committee consisting of three employees designated by the Union and three Management members designated by the Company shall be established. By mutual agreement, the committee may be increased to not more than six representatives for each party. The safety committee shall hold regular meetings at times determined by the committee. The function of the safety committee shall be to *advise with* the Plant Manager concerning safety and health matters *but not to handle grievances*. In the discharge of its function the safety committee shall: Consider existing practices and rules relating to safety and health, formulate suggested changes in existing practices and rules, and recommend adoption of new practices and rules. Advices of the safety committee, together with supporting suggestions, recommendations and reasons shall be submitted to the Plant Manager for his Company's responsibility to provide for the safety and health of its employees during the hours of their employment and the mutual objectives set forth in Section 1.

4. A Union member and a Management member of the safety committee may accompany the State Mine Inspector or his Deputy, on any inspection made at the property.

5. Two men shall be designated by the Union to accompany the Safety Engineer on tours of the mine. Once each month, one of these two men, together with the Safety Engineer, shall make a tour of a section of the mine. The results of this tour shall be considered at the following Union-Management safety committee meeting.

6. In the event a recommendation with respect to safety conditions that needs action immediately concurred in by a majority of the entire committee, is not carried out, the Union may have recourse to the grievance procedure." [Emphasis added].

781, 22 Cal.Rptr. 211, 371 P.2d 987 (1962); *Inglis v. Operating Engineers Local Union No. 12*, 58 Cal.2d 269, 23 Cal.Rptr. 403, 373 P.2d 467 (1962). Duties arising in the above cases are dissimilar to the duty asserted in this case. The distinguishing fact is that here an action for damages (if the union members or personal representatives had instituted suit) flows from a contractual obligation undertaken by the union to benefit its members and their working conditions. If liability could lie with the union under the common law, it would be because of negligent performance of a duty assumed and not a duty otherwise imposed by the common law. As this opinion hereinafter makes clear, however, the duty is one arising under federal law, namely, the duty of fair representation.

There are three cases similar to the matter at hand: *Bryant v. International Union, United Mine Workers of America*, 467 F.2d 1 (6th Cir. 1972), *cert. denied* 410 U.S. 910, 93 S.Ct. 1370, 35 L.Ed.2d 592 (1973), *Brough v. United Steelworkers of America, AFL–CIO*, 437 F.2d 748 (1st Cir. 1971) and *Helton v. Hake*, 386 F.Supp. 1027 (W.D.Mo.1974). In *Bryant* representatives of the estates of eight deceased miners brought actions against decedents' employer and union. It was asserted that the union failed to perform its duties under a collective bargaining agreement which incorporated provisions of the Federal Mine Safety Code. The district court dismissed suit against both defendants and plaintiffs appealed from the decision as regards the union. The Sixth Circuit Court of Appeals affirmed, holding that the agreement imposed no affirmative duty on the union to inspect the mines. The court concluded that the union did not breach any duty created by the collective bargaining agreement or an obligation of fair representation.

In *Helton* plaintiff survivors of a deceased employee brought suit against a union which removed the case to federal court. The court held that removal was improper for there was no breach of a duty of fair representation. It was stated that a mere negligent failure of a union to perform a duty owed to its members under a collective bargaining agreement does not state a claim sufficient to invoke Section 301(a) jurisdiction.

In *Brough* plaintiff received workmen's compensation benefits for injuries sustained while operating an allegedly faulty machine. Plaintiff's original complaint sounded in common law tort; however, after the union removed the matter to federal court, plaintiff added a second count, alleging denial of fair representation. The First Circuit Court of Appeals affirmed dismissal of Count Two and stated:

> "The Labor Management Relations Act imposes upon the exclusive bargaining representative only a duty of good faith representation, not a general duty of due care." *Supra*, at 750.

The court was then confronted with proper disposition of the original common law negligence count, and opted in favor of remand, observing as follows:

> "Even though ultimately there may be a question of federal law, the state court can appropriately decide that question. In the meantime interpretation of the state common law will be needed, not only to determine if the federal question is to be reached, but if it is reached, to aid in its resolution. While the exercise of this discretion should ordinarily be a matter for the district court, that court did not consider the question because it regarded the first count, as well as the second, as an allegation of a breach of the duty of fair representation." *Id.*

In *Bryant* the court noted:

> "This Court is not unfamiliar with the difficult and longstanding problem of ensuring safety in the coal mines of this country. We recognize the harsh plight of those who have lost the family breadwinner through the all too frequent intervention of mining disaster. The answer to their problem is not to pervert the collective bargaining process by reading into its instruments a liability which was never contemplated and duties which were never assumed in fact or in theory." *Supra*, at 5–6.

While the *Bryant* court was not confronted with a common-law claim as in this case, nevertheless, the decision reflects concern for the inextricable connection of such a theory with the duty of fair representation, when the cause of action arises from a collective bargaining agreement. The *Brough* court also apparently realized the potential morass of attempting to sever a common-law claim of negligence from the law of fair representation. The *Helton* court, on the other hand, would not likely find an inextricable connection.[2] This court finds such a connection.

The rights and duties of a union are defined by a collective bargaining agreement, and its responsibilities flow out of the bargaining process. Every power granted to a union by management does not necessarily create a corollary contract right in the employee against his union. *Bryant v. International Union, United Mine Workers of America, supra,* at 5. A member's right to sue the unions in this case for lack of fair representation is derived from the collective bargaining agreement.[3] The abil-

ity to influence employee working conditions and employee safety is a cornerstone underlying the very existence of unions and stands as one of their foremost purposes. In the context of a particular bargaining agreement, the area of safety grievances may be presumptively arbitrable.[4] *Gateway Coal Co. v. United Mine Workers of America,* 414 U.S. 368, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974). Union participation and concern for member safety is desirable, and the right to have a meaningful voice as regards safety is derived from the give-and-take collective bargaining process.

This court has addressed an analogous argument urged by the plaintiffs in this case in *Provo v. Bunker Hill Company,* 393 F.Supp. 778 (D.C.Idaho 1975). In *Provo,* plaintiff sought to obtain recovery in addition to workmen's compensation and asserted that his employer should be liable for an assumption of an additional duty, under a dual-capacity rationale. Plaintiff argued that an employer's furnishing of defective safety equipment was an act in a capacity other than as an employer. This court re-

---

2. See language on pages 1033–1034 in *Helton,* supra.

3. It is established that as an exclusive bargaining representative, the union has a statutory duty fairly to represent all of its employees, both in its collective bargaining with the employer, and in its enforcement of the resulting agreement. *Vaca v. Sipes,* 386 U.S. 171, 177, 87 S.Ct. 903, 909–910, 17 L.Ed.2d 842, 850 (1967). Here, if union members had instituted suit it would be a challenge to the enforcement or lack of enforcement of the collective bargaining agreement. In the Ninth Circuit, a union breaches its duty of fair representation when its actions or inactions are either arbitrary, discriminatory or in bad faith. *Beriault v. Local 40, Super Cargoes & Check. of I.L. & W.U.,* 501 F.2d 258, 263–264 (9th Cir. 1974).

4. The Supreme Court recently in *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976) addressed the nature of a breach of fair representation suit. The following quotes from *Anchor* reveal that such a suit may be brought to vindicate "uniquely personal rights" of employees such as working conditions. Further, the right to sue is granted because collective activity may sometimes arbitrarily be at the expense of an individual member.

"Section 301 contemplates suits by and against individual employees as well as between unions and employees; and contrary to earlier indications § 301 suits encompass those seeking to vindicate 'uniquely personal' rights of employees such as wages, hours, overtime pay, and wrongful discharge . . ." 96 S.Ct. at 1055, 47 L.Ed.2d at 240.

\* \* \* \* \* \*

". . . The federal labor laws, in seeking to strengthen the bargaining position of the average worker in an industrial economy, provided for the selection of collective-bargaining agents with wide authority to negotiate and conclude collective-bargaining agreements on behalf of all employees in appropriate units, as well as to be the employee's agent in the enforcement and administration of the contract. Wages, hours, working conditions, seniority and job security therefore became the business of certified or recognized bargaining agents, as did the contractual procedures for the processing and settling of grievances, including those with respect to discharge."

\* \* \* \* \* \*

". . . the duty of fair representation has served as a 'bulwark to prevent arbitrary union conduct against individuals stripped of traditional forms of redress by the provisions of federal labor law.' " 96 S.Ct. at 1056, 47 L.Ed.2d at 241.

jected plaintiff's attempt to dissect the employer's duties and specifically to separate the safety duty imposed upon an employer. Here, this court rejects third-party plaintiffs' attempt to dissect a safety responsibility from other responsibilities flowing to a union member under the union's duty of fair representation.

 In light of the collective bargaining agreement in this case, a theory of common-law negligence for breach of an alleged safety duty is inextricably intertwined and embodied in the union's duty of fair representation.[5] The duty of fair representation is governed by federal law, *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967) and federal law dictates that the exclusive duty owed in the context of this case is the duty of fair representation. Since the third-party plaintiffs categorically disclaim any reliance on a breach of fair representation, they have failed to state a claim for which relief can be granted.[6]

The foregoing reasoning is supported by Idaho case law. In *Rawson v. United Steelworkers of America,* Case No. 17694, etc., (First Judicial Dist., County of Shoshone, January 29, 1976) wherein the same theory of liability against the Steelworkers Union was urged by representatives of four deceased miners arising from the disaster involved in this case, the court, per Judge Towles, held that the complaints failed to state a claim. The court, in reaching the same result as this court, stated:

" . . . However, in whatever forum this question is presented, that is, a claim of inadequate representation, the federal law would govern the disposition of the claim on its merits. "Negligent performance of its contractual duties does not state a claim under federal law for breach of fair representation. Plaintiffs' complaint is grounded solely on recognized principles of tort law and the federal labor act does not recognize that responsibility of the union in its representative capacity." *Supra,* Memorandum Decision & Order, at 3.

While *Rawson* is on appeal to the Idaho Supreme Court, its reasoning is persuasive.

 It should be noted that the *Bryant* court analyzed the matter before it in terms of the wording of the collective bargaining agreement and since the words "may inspect any mine" were used, the court found the union's duty was permissive. Here the agreement uses the words "shall inspect." Even if the agreement here can be read to impose a mandatory duty,[7] liability does not automatically ac-

---

5. In *Dente v. International Org. of Masters, Mates & P., Local 90,* 492 F.2d 10 (9th Cir. 1974), *cert. denied,* 417 U.S. 910, 94 S.Ct. 2607, 41 L.Ed.2d 214 (1974), plaintiff sought relief under Section 301(a), and the court held that the complaint under that section was proper, however, negligent conduct by the union was not sufficient to uphold relief. Plaintiff also asserted what was labeled a separate theory of recovery—a recovery based on breach of the collective bargaining agreement. The court stated:

"*The right of an employee to sue his union under section 301(a) is limited to those cases wherein there has been a breach of duty of fair representation by the union . . .* Collective bargaining agreements are unique in nature, and the current limitations on the employee's right to sue under section 301(a) are not so restrictive as substantially to impair his protective remedies." 492 F.2d at 12, footnote 4. (Emphasis added).

The remedy of fair representation is broad and where it flows from a collective bargaining

agreement, the Ninth Circuit intimates that it is exclusive.

6. Negligence on the part of the union is insufficient to impose liability for breach of a duty of fair representation. *Dente v. International Org. of Masters, Mates & P., Loc. 90, supra; Brough v. United Steelworkers of America, AFL–CIO, supra; Helton v. Hake, supra.* See also: *Vaca v. Sipes, supra; Beriault v. Local 40, Super Cargoes & Check. of I.L. & W.U., supra.*

7. Examination of Article IX entitled "Safety and Health" reveals that a union member's rights, as well as the union's rights regarding results of an inspection are rather limited. The mine reserved significant, if not controlling, power to determine that another employer may be assigned to replace a grieving employee, and no employee is permitted to prevent another employee from working on the job. In addition, Article XVI, Section 3, provides:

"3. The management of the Company's property being vested exclusively in the Company, the Company has, subject to the provisions of this Agreement, the sole di-

crue for personal injuries allegedly resulting from a breach of fair representation. Similarly, a union's failure to file a grievance or carry the grievance forward does not automatically give rise to a breach of fair representation. *See: Vaca v. Sipes, supra.* With reference to certain sections embodying the Federal Mine Safety Code in the collective bargaining agreement in *Bryant,* the court noted that in instances where federal mine inspectors have reported violations, the agreement does not require the union to compel performance in accordance with the safety code. The court stated:

"Collective bargaining agreements are literally agreements between unions and employees; the Union negotiators are intent on gaining the maximum power possible from management negotiators. Whether or not they choose to exercise all the power gained depends on a variety of situations relating to the overall employment situation in the industry. It would be a mistake of vast proportion to read every power granted the union by management as creating a corollary contract right in the employee as against the union. Such interpretation of collective bargaining agreements would simply deter unions from engaging in the unfettered give and take negotiation which lies at the heart of the collective bargaining agreement." *Supra* at 5.

Finally, and most importantly, the court stated:

"To saddle labor unions with liability for the mine operators' failure to comply with standards introduced into the contract at the union's bidding would simply be to discourage the inclusion of similar or more effective standards in later contracts. Such result would not serve the interest of miners and would retard rather than advance the goals of the National Labor Policy." *Supra* at 5–6.

It has traditionally been the duty of employers to furnish a safe place of employment. Such a policy is reflected in the common law, labor law, workmen's compensation laws, Federal Mine Safety Code and the Occupational Safety and Health Act. To permit a sanction of legal liability to accompany a union's exercise of responsibility in safety matters, together with either loss shifting or sharing, would weaken the duty of the employer at the expense of the union and its members.[8] Union funds are derived from its members and only the largest unions may be potentially able to absorb the type of loss involved in this case. While unions may seek insurance coverage, the cost must be borne by the membership.[9] Unions do not have finite limits of liability as do employers under workmen's compensation, nor can unions pass along such a loss to the public as may an employer. Moreover, the result is readily apparent, if unions could be held liable in cases such as this—there would be no negotiation on safety matters.[10] To impose liability on the

rection of the working forces, including among others the right to hire, discipline and discharge for cause, to assign work, to determine qualifications, to effect job changes, to determine the equipment to be used and to expand, curtail, suspend, or resume operations."

It appears that the union's duty respecting safety matters was advisory. In particular, Article IX, Section 3, states that the "function of the safety committee shall be to *advise* with the Plant Manager concerning safety and health matters but not to handle grievances." (emphasis added) The union's only responsibility so far as a remedy is concerned is to use grievance procedures, if it should so desire. There is no evidence or allegation that the union failed to file a grievance or that such failure was in any way a contributory cause of the fire at Sunshine Mine. Affidavits on file

reveal consistent with the wording of Article IX, Section 3, that the union's duty was advisory, and such affidavits have not been contradicted.

8. Such a result would appear to follow due to the subrogation rights of an employer against a third-party under Idaho's Workmen's Compensation Law, Idaho Code § 72–223.

9. Of course, the employer may well have to pay through higher wages, yet such a cost component may be at the expense of the union which must forego other negotiable demands. In the end the shift will monetarily affect the union.

10. To the extent some unions may still accept such responsibility, even though it is coupled with potential liability, such unions would be forced to file all safety grievances at a mem-

union in a case such as this is against public policy and would seriously disrupt labor relations policy.[11]

Third-party defendants have also urged that the third-party complaint must be dismissed because even if Idaho law applied in this case, there could be no recovery. The court agrees. In Idaho, where workmen's compensation is available, an employee may not sue a co-employee. In *White v. Ponozzo,* 77 Idaho 276, 291 P.2d 843 (1955), the Supreme Court of Idaho reasoned that a co-employee who is acting within the scope of his employment is an agent of his employer.

"His acts and conduct [become] the acts and conduct of the employer, and the exemption from damages at law extended to the employer by the Workmen's Compensation Law is also by that act extended to co-employees through whom the employer acts. Thus, the co-employee becomes merged in the employer and is not a third person, within the meaning of the compensation law, against whom a damage action may be maintained." *Supra,* at 280, 291 P.2d, at 845. *Followed* in *Nichols v. Godfrey,* 90 Idaho 345, 411 P.2d 763 (1966).

The union members in this case are no different than co-employees, and even though the union may have an identity separate from its members, in reality its members are co-employees, who are agents for the employer. The Workmen's Compensation Act would under Idaho law bar this suit, even if it were not determined that the union's exclusive duty is that of fair representation.

ber's insistence, for failure to do so could be labeled a lack of due care. Such a result may well clog settlement machinery. *See: Vaca v. Sipes,* 386 U.S. at 191–192, 87 S.Ct. 903. Furthermore, even if a settlement may occur, a union may not take comfort in that result for the employee who objects to the settlement may potentially argue ineffective representation.

11. If third-party plaintiff's views were upheld, a grave mischief results from injecting various state tort concepts

For the reasons previously expressed, the court ORDERS, ADJUDGES and DECREES that PVO International, Inc.'s and Polytron Company's third-party complaints against Local 5039 and the United Steelworkers of America be, and the same are hereby, DISMISSED WITH PREJUDICE.

into a union's duty of fair representation. Specifically, the standard of care which would be required of unions in representing employees would vary according to the statutory or common-law tort principles of each state, thereby frustrating the principle of uniformity developed under federal labor law. *See: Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of America v. Lucas Flour Co.,* 369 U.S. 95, 102–104, 82 S.Ct. 571, 576–577, 7 L.Ed.2d 593, 598–599 (1962).