413 A.2d 701

Joseph B. FARMER

v.

GENERAL REFRACTORIES COMPANY, a corporation, A. P. Green Refractories Company, a corporation, and Harbison-Walker Refractories Division of Dresser Industries, Inc., Defendants,

v.

MESTA MACHINE COMPANY, a corporation, United Steelworkers of America, and United Steelworkers of America, Local 1229, Additional Defendants.

Appeal of HARBISON–WALKER REFRACTORIES and General Refractories Company, a corporation.

Superior Court of Pennsylvania.

Argued April 9, 1979.

Filed Oct. 26, 1979.

Avrum Levicoff, Pittsburgh, for appellants.

Rudolph L. Milasich, Jr., Pittsburgh, for appellees.

Before VAN der VOORT, SPAETH and WATKINS, JJ.

SPAETH, Judge:

This is an appeal from an order denying a petition for an extension of time within which to join an additional defendant.[1]

On October 25, 1977, Joseph B. Farmer filed a complaint alleging that in the course of his employment with the Mesta Machine Company, he had contracted silicosis from exposure to refractory products manufactured by the General Refractories Company and other named defendants. General Refractories was served with the complaint on October 28, 1977. Within sixty days, on December 27, 1977, General Refractories filed a complaint to join United Steelworkers of America, Local 1229, as an additional defendant. This was done in the belief that Farmer was a member of Local 1229. On February 15, 1978, Local 1229 filed an answer denying that Farmer was one of its members. On February 23, 1978, Farmer's deposition was taken and he said that he was a member of Local 7174 of the Steelworkers. On February 27,

---

1. Such an order is final, and therefore appealable. *Zakian v. Liljestrand*, 438 Pa. 249, 264 A.2d 638 (1970).

1978, General Refractories filed a petition pursuant to Pa.R. Civ.P. 2253 seeking an extension of time within which to join Local 7174 as an additional defendant. The petition alleged the cause of the delay; it did not, however, contain any specifics as to the cause of action that General Refractories sought to assert against Local 7174, only saying in this regard that "7. The complaint to Join Additional Defendant is based upon Local Union's responsibility to its members." Record at 37a. No copy of the complaint sought to be filed against Local 7174 was attached to the petition. However, a copy of the complaint was attached to General Refractories' memorandum in support of the petition. In this manner the lower court was made aware of the nature of the cause of action that General Refractories sought to assert against Local 7174. On April 6, 1978, the lower court filed an order denying General Refractories' petition. General Refractories filed a petition for reconsideration of the order, which was granted, but on May 26, 1978, the lower court again filed an order denying General Refractories' petition.

The lower court denied General Refractories' petition on the ground that federal law preempted the cause of action that General Refractories sought to assert against Local 7174. On this appeal, General Refractories argues that the lower court applied the wrong legal standard in judging the petition, specifically, that the court should not have decided whether General Refractories wished to assert a valid cause of action against the Local, but only whether the delay in joinder was justified and whether joinder would prejudice Farmer's right to a speedy adjudication. Alternatively, General Refractories argues that the cause of action it wishes to assert against the Local was valid.

Pa.R.Civ.P. 2253 states:

Neither praecipe for a writ to join an additional defendant nor a complaint if the joinder is commenced by a complaint, shall be filed by the original defendant or an additional defendant later than sixty (60) days after the service upon the original defendant of the initial pleading of the plaintiff or any amendment thereof unless such filing is allowed by the court upon cause shown.

The decision whether "cause [is] shown" is largely a matter within the discretion of the lower court, *Zakian v. Liljestrand*, 438 Pa. 249, 264 A.2d 638 (1970); *Marnell v. Cross*, 372 Pa. 82, 92 A.2d 688 (1952), and its decision will not be reversed unless shown to be an abuse of discretion, *Zakian v. Liljestrand, supra; Marnell v. Cross, supra.*

In deciding whether the lower court abused its discretion, we start with the petition. Goodrich-Amram states that the petition "must contain (1) some reasonable justification or excuse for the delay; (2) a statement of the facts alleged to render the proposed additional defendant alone liable, or liable with, or liable over to defendant, or liable to the defendant on a proper cross claim; and (3) allegations that the late joinder will not be prejudicial to the proposed additional defendant." Goodrich-Amram 2d § 2253:3.1. Another commentator states: "While the court is not to prejudge the matter, it is clear that it would be absurd to grant time in which to join an additional defendant when by the facts made known to the court it would be impossible for either the plaintiff or the defendant to recover from the additional defendant." 4A Anderson § 2253.14.

While a number of Common Pleas decisions have supported the Goodrich-Amram and Anderson view, *see Zilk v. Heyman and Lisnick*, 16 Beav. 180 (1954); *Lambert v. Webb Mft. Co.*, 77 Dist. and Co.Rep. 363 (1951); *Scureman et ux. v. Perkiomen Realty Co.*, 47 Dist. and Co.Rep. 363 (1951); *Scureman et ux. v. Perkiomen Realty Co.*, 47 Dist. and Co.Rep. 361 (1943), there is little appellate case law. In *Wallin v. 1700 Market Street, Inc.*, Pa.Super. (J. 256/79, filed 7/2/79), we did not decide whether the petitioner had stated a proper cause of action in its petition to join the additional defendant because we concluded that the petitioner had not proceeded with due diligence. Nevertheless, in *dictum* we criticized the petition because it did not disclose that the additional defendant owed the petitioner any duty that would support recovery. Other than *Wallin*, there are a wealth of cases on Pa.R.Civ.P. 2253 in which the issue was not reached. *See Zakian v. Liljestrand, supra; Marnell v.*

*Cross, supra; Welch Foods, Inc. v. Bishopric Products Co.*, 254 Pa.Super. 256, 385 A.2d 1007 (1978); *Desiderio v. R. and R. Tire Center, Inc.*, 242 Pa.Super. 135, 363 A.2d 1197 (1976); *Lamoree v. Penn Central Transport Co.*, 238 Pa.Super. 380, 357 A.2d 595 (1976); *Moore v. Howard P. Foley Co.*, 235 Pa.Super. 310, 340 A.2d 519 (1975).[2]

■ With the issue now before us, we hold that a petition for extension of time under Pa.R.Civ.P. 2253 must contain a statement of facts alleging a cause of action against the additional defendant. In *Zakian v. Liljestrand, supra*, the Supreme Court described Rule 2253 as "an attempt to provide a means to simplify and expedite the disposition of matters involving numerous parties (*Coppage v. Smith*, 381 Pa. 400, 113 A.2d 247 (1955)) without subjecting the original plaintiff to unreasonable delay in the prosecution of his portion of the litigation." 438 Pa. at 256, 264 A.2d at 641. Requiring the defendant to allege the additional defendant's liability in the petition will expedite disposition because the lower court will be able to determine at an early stage whether there is any basis for including the additional defendant in the litigation. In making its determination the lower court must exercise its discretion carefully. There may be little factual development at this point, and the court should not conclude that the petition fails to allege a cause of action against the additional defendant unless that is clearly so. *See* Goodrich Amram 2d § 2252(b):1.

■ Here we think it is clearly so that General Refractories' petition failed to allege a cause of action against Local 7174. As mentioned, the complaint that General Refractories wished to file against the Local is not in the record before us. However, the lower court's opinion states that the complaint alleged that Farmer's injuries were the result of the Local's "failure to exercise reasonable care in protecting its members from health and safety hazards (a) by failing to warn plaintiff [Farmer] of the dangers of the

2. General Refractories cites these cases in its brief. They neither support nor contradict the view that the petition must contain a statement of facts alleging a cause of action.

products to which plaintiff was exposed, (b) by failing to inform plaintiff of what would be safe and adequate wearing apparel, (c) by failing to warn plaintiff of what would constitute safe, efficient and proper equipment, (d) by failing to inform plaintiff of the proper and safe method of performing its duties and employment, (e) by failing to protect plaintiff through bargaining for safe working conditions and (f) by failing to provide proper information to plaintiff." Slip op. at xi. These allegations are similar to those made against the unions in *Carollo v. Forty-Eight Insulation, Inc.*, 252 Pa.Super. 422, 381 A.2d 990 (1977). There, the defendant argued that it had stated a cause of action against the unions in state court because they had a duty, subsumed within their duty of fair representation, to search out hazards so that the hazards could be bargained over. We concluded that "it would represent an intrusion into the area preempted by federal law were we to hold that the unions' duty of fair representation imposed upon them the duty to search out and take precautions against the possibility that plaintiffs as its members might suffer harm by inhaling asbestos fibers while working for Wheeling-Pittsburgh." 252 Pa.Super. at 434, 381 A.2d at 996.

General Refractories argues that *Carollo* is distinguishable, suggesting that in *Carollo* the defendant was only arguing that the union had violated its contractual duty of fair representation, whereas here "the claim is directed at the conduct of unions *outside* of their representational capacity," and that as a consequence the intrusion into areas regulated by federal law extant in *Carollo* is absent here." Appellant's Brief at 28 (emphasis added). We note, however, that the question presented in *Carollo* was whether "the imposition on the unions of *tort* liability under state law would represent permissible state action or an intrusion into the area preempted by federal law." 252 Pa.Super. at 433, 381 A.2d at 995 (emphasis added). The allegations of misconduct in *Carollo* and here are substantially the same; the label attached to the misconduct is immaterial.

Nor do we agree with General Refractories that *Farmer v. United Brotherhood of Carpenters and Joiners of America, Local 25*, 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977), limits *Carollo*. In *Farmer*, the issue was whether the National Labor Relations Act preempted a tort action brought in state court by a union member against the union and its officials to recover damages for intentional infliction of emotional distress. The Court decided that the tort action was not preempted, largely because it concluded that the "potential for interference [with the federal regulatory framework] [was] insufficient to counterbalance the legitimate and substantial interest of the State in protecting its citizens." 430 U.S. at 304, 97 S.Ct. at 1065. However, the Court "reiterate[d] that concurrent state-court jurisdiction cannot be permitted where there is a realistic threat of interference with the federal regulatory scheme." 430 U.S. at 305, 97 S.Ct. at 1066. Since our decision in *Carollo* was based on the fear of just such a threat, we do not agree that *Farmer* has changed the import of that case.

General Refractories' reliance on *Helton v. Hake*, Mo.App., 564 S.W.2d 313 (1978) is also misplaced. In *Helton*, the decedent was killed when he made contact with a high tension wire on a construction site. At the time of the incident the union to which the decedent belonged was a party to a collective bargaining agreement with the decedent's employer. One part of this agreement provided that no work should be done in proximity to high tension wires until certain safety precautions had been taken. The agreement also provided that the union steward was responsible for compliance with this provision and that the employer was in no way responsible for the performance of the duties by the steward. In holding that the survivors' action in negligence against the union was not preempted by federal law, the court in *Helton* undertook to distinguish the decisions in *Bryant v. International Union U.M.W. of America*, 467 F.2d 1 (6th Cir. 1972), and *House v. Mine Safety Appliances Co.*, 417 F.Supp. 939 (D. Idaho 1976). In both *Bryant* and *House* the respective courts had held that the union's

duty of fair representation did not include a duty to insure or bargain over the safety of the workplace. In distinguishing *Bryant* and *House*, the court in *Helton* stated that the duty breached by the union in the case before it was not an extension of the duty of fair representation but was a duty specifically and unequivocally assumed by the union under the collective bargaining agreement; the important fact was that the union in *Helton* had assumed a specific safety duty under the collective bargaining agreement. In focusing on this fact the court stated:

> Here, however, the Union has chosen to go far beyond a mere advisory status or representative capacity in the processing of grievances. Rather, it has taken over for itself a managerial function, namely the full independent right to enforce safety requirements. With its demand for and successful acquisition of that management right, it must also accept the concomitant responsibility. Under the terms of this particular collective bargaining agreement, the safety responsibility assumed by the Union is separate and distinct from the normal and usual duties of a purely representative nature such as those involved in the processing of grievances. [The] . . . defendants here should be held to answer for their breach of tort duty to use due care.

564 S.W.2d at 321 (footnote omitted).

Thus the crucial point, which distinguishes *Helton* from *Bryant, House, Carollo*,[3] and the present case, is that in *Helton* the union had assumed a specific duty with respect to the employee's safety under the collective bargaining agreement. Here there is no such specific assumption of duty, and just as we refused in *Carollo* to assume that such a duty was part of the duty of fair representation, so too we will not assume that such a duty exists in this case absent an indication that the Local assumed such a duty. To impose such a duty either as an extension of the duty of fair representation or as some type of common law duty would

**3.** In *Carollo* this court cited both *Bryant* and *House* in support of its decision.

result in an unwarranted interference with the federal scheme, for it would place upon the Local as part of the collective bargaining process a duty it had never assumed.

Affirmed.