**Michael CURRAN, Plaintiff,**

v.

**INTERNATIONAL UNION, OIL, CHEMICAL & ATOMIC WORKERS, AFL–CIO; and Abrasive Workers, Local 8–12058, Oil, Chemical & Atomic Workers International Union, Defendants and Third-Party Plaintiffs,**

v.

**The CARBORUNDUM COMPANY, Third-Party Defendant.**

**No. CIV–82–237C.**

United States District Court, W.D. New York.

Jan. 6, 1984.

Patrick Berrigan, Niagara Falls, N.Y., for plaintiff.

Lipsitz, Green, Fahringer, Roll, Schuller & James, Buffalo, N.Y. (Stuart M. Pohl, Buffalo, N.Y., of counsel), for defendant Unions.

Hurwitz & Fine, Buffalo, N.Y., (Dan D. Kohane, Buffalo, N.Y., of counsel), for defendant Carborundum.

CURTIN, Chief Judge.

I.

Plaintiff was employed by third-party defendant Carborundum Company when, on March 8, 1979, his hand became caught in the "rubber roll" machine that he was op-

erating. The result of this accident was a partial amputation of plaintiff's hand.

At all times relevant to this case, defendants and third-party plaintiff International Union, Oil, Chemical & Atomic Workers, AFL–CIO [International] represented the production and maintenance employees of the Carborundum Company at its Buffalo Avenue facility in Niagara Falls, New York. This representation was pursuant to the terms of a collective bargaining agreement negotiated with Carborundum. At all times relevant herein, defendant and third-party plaintiff Abrasive Workers, Local 8–12058, Oil, Chemical & Atomic Workers International Union [Local] was an affiliate of International. Local also represented the production and maintenance employees at Carborundum's Buffalo Avenue facility.[1] Thus, plaintiff was represented by these unions at the time he sustained the injury to his hand.

Plaintiff's complaint sets forth two theories under which he seeks to recover for his injury. The first is a state law negligence claim, in which it is alleged that defendant unions breached an alleged duty "to safeguard the plaintiff from unreasonable dangers." The second is a federal claim alleging that the unions breached their duty of fair representation.

██ International and Local now seek a dismissal of the complaint. They style their motion as one for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). However, since documents outside the pleadings have been submitted and considered by the court, the court will treat the instant motion as one for summary judgment pursuant to Fed.R.Civ.P. 56(b).

International and Local argue that 1) under federal law their sole duty to plaintiff was the duty to fairly represent him under the collective bargaining agreement and that this duty does not include a duty of care, and 2) the unions did not breach their duty of fair representation, even if it is

assumed that they negligently failed to prevent a clearly foreseeable accident.

The thrust of the first argument is that the question of a union's duty with respect to its members is governed exclusively by federal law. If this duty does not carry with it a duty of care, then no common law negligence claim can be asserted against the unions. The unions' second argument is essentially that the plaintiff has not stated any facts which would indicate a breach of the duty of fair representation as that duty is defined by federal case law.

For the reasons stated below, the motion of the defendants and third-party plaintiffs is denied in part and granted in part.

## II.

██ The motion of International and Local is granted with respect to the first count of the complaint. A union's obligations to its members are circumscribed by the general duty of fair representation. This relationship between a union and its members is governed exclusively by federal law, and the law does not define the duty of fair representation so as to include a duty of care. Absent a duty of care with respect to its members, there can be no breach thereof and, hence, no negligence claim. Thus, with certain exceptions not applicable here, a union member cannot state a negligence claim against his union. *Condon v. Local 2944, United Steelworkers, etc.,* 683 F.2d 590, 594–95 (1st Cir. 1982); *House v. Mine Safety Appliances Co.,* 417 F.Supp. 939, 945 (D.Idaho 1976).

Plaintiff's complaint against International and Local flatly asserts that the unions' duty towards him arose "by reason of a certain collective bargaining agreement" between the unions and the employer, "including matters pertaining to safety and safety inspections." (Docket Item 19, Ex. A, ¶ 12.) The plaintiff also suggests that the unions' implementation of the agreement gave rise to a duty of care on the part of the union.

---

1. Local and International represented Carborundum's production and maintenance workers under the same collective bargaining agreement negotiated with Carborundum. A copy of this agreement is attached to Docket Item 16 as Exhibit A.

The pertinent provisions of the agreement are contained in Article XXIII, entitled "Safety and Health." Section 159 authorizes the creation of a Health and Safety Committee made up of union members. This committee is empowered to meet with the employer's representatives "for the purpose of discussing matters concerning the safety and health of the employees." (Agreement, Docket Item 16, Ex. A, p. 54.) Section 158 provides that "[t]he Employer will continue to make reasonable provisions for the safety and health of his employees in the plant during their hours of employment." (*Id.*, p. 54.) Taken together, these provisions indicate that the powers of the committee do not include the authority to make policy decisions regarding safety. Rather, the purpose of the meetings with employer representatives is to "discuss" safety matters, and it is the employer who retains the duty to "make reasonable provisions" for safety and health. (*Id.*, p. 54.) *Cf., House, supra* at 942, n. 1.

Nevertheless, the unions are incorrect when they state that the Safety and Health Committee is an "optional" union function. The agreement states that the committee "may be elected or appointed." This would indicate that no committee need ever have been established. However, such a committee has been established and has, in fact, held meetings. (*See, e.g.,* Docket Item 19, Ex. C, D.) Once a Safety and Health Committee is established pursuant to the agreement, the agreement provides that "[s]afety meetings *will* be scheduled" between the committee and the employer's representatives. (Agreement, § 159, Docket Item 16, Ex. A, p. 54, emphasis added.) Accordingly, the functions of the committee are not entirely optional.

However, these factors may not be material to the question of whether a union member may assert a valid negligence claim against his union based on circumstances arising from a union's obligations under a collective bargaining agreement. The agreement and facts of the present case are strikingly similar to the facts and agreement encountered in *Condon v. Local 2944, United Steelworkers, etc., supra* at

591–92 n. 1. In that case, a union member attempted to assert a state law negligence claim against his union because of the union's alleged breach of duties owed him concerning safety. The court held that federal law has preempted the issue of a union's duty towards its members. This duty, the court held, does not include a duty of care, and therefore, no claim based upon negligence could be asserted against the union.

We have reviewed the relatively few cases to address the specific question and conclude that a union cannot be held liable for the negligent performance of a duty it assumed that arose inextricably ... from the safety and health provisions of a collective bargaining agreement.

*Condon v. Local 2944, United Steelworkers, etc., supra* at 595.

As previously noted, the source of the unions' alleged duty of care is said by the plaintiff to have arisen from the agreement. Even though it might be true that International and Local exercised their authority concerning health and safety matters to an extent greater than was the case in *Condon,* this would not alter the fact that the alleged duty arose inextricably from the health and safety provisions of the agreement. The degree to which authority is exercised can do nothing to change the source from which that authority arose.

Since the unions' duty in the present case arose from the agreement, the plaintiffs' claim concerns the unions' role as the exclusive bargaining agent for its members pursuant to section 9(a) of the National Labor Relations Act (29 U.S.C. § 159(a)). This is a relationship which Congress has regulated to the exclusion of the states. *Teamsters Union v. Morton,* 377 U.S. 252, 261, 84 S.Ct. 1253, 1259, 12 L.Ed.2d 280 (1964); *Condon, supra* at 595; *House, supra* at 945.

█ A union's right to be the exclusive bargaining agent for its members arises from federal law. 29 U.S.C. § 159(a). The Supreme Court has held that

implicit in this right is a duty to fairly represent the interests of the members. *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *International Brotherhood of Electrical Workers v. Foust,* 442 U.S. 42, 46–47 n. 8, 99 S.Ct. 2121, 2125 n. 8, 60 L.Ed.2d 698 (1979). This duty is breached not by negligence, but only by union actions which are arbitrary, discriminatory, or in bad faith. *Vaca v. Sipes, supra* 386 U.S. at 190, 87 S.Ct. at 916–17. Inasmuch as the first count of plaintiff's complaint seeks the recovery of damages under a standard of liability significantly more relaxed than that imposed on unions by the federal law that exclusively controls this area, that count of the complaint must be dismissed. *Condon v. Local 2944, United Steelworkers, etc.,* 683 F.2d 590, 596.

█ This result does not totally preclude a union member from ever asserting a claim for negligence against his union. If the claim were to arise from facts and circumstances which touch upon the union's bargaining duties only in a tangential way, then federal law would not be a bar. Thus, a union member may assert a claim against his union for the intentional infliction of severe emotional distress, *Farmer, Special Administrator v. United Brotherhood of Carpenters & Joiners of America, Local 25,* 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977), because such a claim has little or nothing to do with the union's function as the member's exclusive bargaining representative. However, in the present case, the nexus between the negligence claim and the unions' rights, functions, and duties under federal law is too close to permit the assertion of such a claim.[2] *Condon, supra* at 595–96; *House, supra* at 946–47.

### III.

█ The unions' motion for summary judgment as to the second count of the complaint requires only brief discussion. Count two is based on the same facts as count one, except that the theory under which plaintiff proceeds is breach of the duty of fair representation. As noted above, this duty is breached when a union represents the interests of a member in a manner which is arbitrary, discriminatory, or in bad faith. This duty is also breached when the union discharges it in a perfunctory manner. *Byrne v. Buffalo Creek Railroad Company,* 536 F.Supp. 1301 (W.D.N.Y.1982).

█ Plaintiff has explicitly alleged that the union carried out its health and safety-related functions in "an arbitrary manner, exhibiting bad faith." Facially, this is a sufficient statement of a claim for breach of the duty of fair representation. *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842. Also, plaintiff has shown that there have been previous accidents at his place of work similar to the one which severely injured his hand. (Affidavits of Charles Wilson, John Thaler, and James Brusino, Docket Item 19.) Plaintiff has also shown that labor-management safety meetings had been held prior to the occurrence of his injury. At one such meeting, the safeness of the mixing rolls was specifically discussed. Apparently, nothing was done, and obviously, plaintiff's injury was not prevented.

These facts and allegations are sufficient to support an inference that International and Local discharged their duty of fair representation with respect to safety and health matters in a perfunctory manner marked by bad faith. The parties dispute these facts, and consequently, triable issues remain. Accordingly, the motion of defendants and third-party plaintiffs must be denied insofar as it relates to plaintiffs' second cause of action for breach of the duty of fair representation.

So ordered.

---

**2.** *Bill Johnson's Restaurants, Inc. v. National Labor Relations Board,* —— U.S. ——, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983), is not to the contrary. In that case, the Supreme Court held that the National Labor Relations Board may not halt the prosecution of a state court lawsuit unless the suit lacks a reasonable basis in fact or law. Unlike the present case, *Johnson* involved the interplay between the state court plaintiff's First Amendment rights and the powers of the National Labor Relations Board.