Creighton POCKALNY and Elinor Pockalny, Plaintiffs,

v.

ELWELL PARKER ELECTRIC CO., INC.; International Union, United Automobile, Aerospace and Agricultural Implement Workers of America; Douglas Fraser, as President of International Union, United Automobile, Aerospace and Agricultural Implement Workers of America; Local # 846, United Automobile, Aerospace and Agricultural Implement Workers of America, and S.C. Lutka, as President of Local # 846, United Automobile, Aerospace and Agricultural Implement Workers of America, Defendants.

INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, and Local # 846, United Automobile, Aerospace and Agricultural Implement Workers of America, Defendants and Third-Party Plaintiffs,

v.

GENERAL MOTORS CORPORATION, Third-Party Defendant.

No. CIV–81–892E.

United States District Court, W.D. New York.

May 10, 1985.

Michael M. Blinkoff, Buffalo, N.Y., for plaintiffs.

Stuart M. Pohl, Arnold Weiss, Gerald Bouvier, Buffalo, N.Y., for defendants.

## MEMORANDUM and ORDER

ELFVIN, District Judge.

In this action seeking monetary damages for personal injuries sustained by plaintiff Creighton Pockalny ("Creighton"), defendants International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("the International Union") and Local #846, United Automobile, Aerospace and Agricultural Implement Workers of America ("Local 846") have moved for summary judgment pursuant to Fed.R.Civ.P. rule 56.

The Complaint alleges that Creighton had been struck by an unmanned moving forklift on or about September 27, 1978 while employed at General Motors Corporation's plant in the Town of Tonawanda, N.Y. and that as a result of such he had suffered painful and permanent serious injuries. The action had been commenced in New York State Supreme Court and was removed to this Court October 22, 1981.

The forklift which struck Creighton allegedly was not in safe working order. A "deadman switch," a device which eliminates all power to the machine and sets the brakes after the operator has lifted his weight from the seat, allegedly had been disconnected. Further inspection of the forklift allegedly had demonstrated that directional controls had been improperly connected as well as other improprieties.

At the time of the incident Creighton was a member of Local 846. In certain documents relating to the agreements among General Motors Corporation ("GM") and the International Union, and the Tonawanda Forge Plant and Local 846, provisions had been made regarding the health and safety of employees at the plant. Plaintiffs have initially referred to specific language in a certain document, which is set forth in a booklet which also contains the collective bargaining agreement ("the

cba"), to support their position that the union defendants had assumed an affirmative duty to seek out and secure corrections of hazards to the health and safety of employees at the plant. The document comprises that part of the booklet which is entitled "INTERPRETATIONS, STATEMENTS, LETTERS AND THE MEMORANDUM OF UNDERSTANDING ON HEALTH AND SAFETY." Its title page, page 209 of the booklet indicates:

"(The following documents connected with the 1976 GM–UAW negotiations are not a part of the National Agreement but have been included in this booklet for informational purposes.)"

The "Memorandum of Understanding Health and Safety" (pages 216–225 of the booklet) states, among other things, that the "Union recognizes its obligation to cooperate in maintaining and improving a safe and healthful working environment" (p. 216), "that the employer will provide unspecified safety clothing, training and equipment" (*ibid.*), that "a National Joint [management and union] Committee on Health and Safety" would be established (p. 218) and that "Local Joint [management and union] Committees on Health and Safety" would be established for each bargaining unit (pp. 219–222). It was further provided that the Local Committees shall meet at least once each month to review health and safety conditions within the plant and shall make a biweekly health and safety inspection and carry out other health and accident-related duties. Plaintiffs have also invited the Court's attention to similarly worded portions of a document entitled "UAW–GM National Informational Subcouncils, April 2—April 5, 1978 * * * Memorandum of Understanding Health and Safety," an educational booklet, drafted and assembled by members of the International Union for presentation, explanation and discussion at informational subcouncil meetings of local union delegates from GM's plants. (This booklet ["the 1978 Memorandum"] is attached as an exhibit to the plaintiffs' September 30, 1983 joint affidavit which is part of their response (filed

on that date) to defendants' motion for summary judgment.)

It is alleged by plaintiffs that language in these documents has imposed upon the union's District Committeemen the duty to search out problems that represent a hazard or hazards to the employees in their respective districts and to secure correction of the same. Furthermore, the Local Committeemen, plaintiffs contend, had the duty to make a bi-weekly health and safety inspection and to investigate and make recommendations concerning conditions involving imminent danger.[1]

The Complaint alleges in its first cause of action that, as a result of Local 846's and the International Union's failures to have complied with obligations contained in the contract with Creighton's employer, he was subjected to an unreasonable risk of harm and was severely injured. The second cause of action maintains that, as a member of Local 846 and in consideration of his payment of dues, Creighton was owed certain duties running to him from Local 846 and the International Union, such duties flowing from an alleged contract between these defendants and him. These obligations included the duty of these defendants to meet their obligations with the employer and, specifically, to protect Creighton from an unreasonable risk of harm while in the regular course of his employment.

The third cause of action alleges negligence on the part of these defendants in failing to make timely inspections and/or that they had made such inspections in a negligent manner, as well as a failure to protect Creighton from an unreasonable risk of harm regarding the forklift truck.

Creighton's wife, Elinor, seeks derivative damages for loss of consortium, services and society allegedly suffered as a result of her husband's injuries.

The union defendants have contended that no statute, regulation, local ordinance or administrative directive places upon either of them a legal obligation to protect their members from safety or health hazards at GM, or to take corrective action should such a problem be found to exist. These defendants further maintain that the agreements merely allow for random inspections and specific investigation of conditions brought to the Local Committee's attention through the provided complaint procedures.

In opposing the instant motion plaintiffs have maintained that the union defendants had taken on duties above and beyond the duty of fair representation owed to union members under federal labor law. Plaintiffs also have maintained that the duty owed to Creighton by the International Union and Local 846 extended beyond those which arose from the cba and therefore contend that any consideration of this action with reference to the duty of fair representation would be inappropriate.

Plaintiffs have further asserted that, inasmuch as their claims against the union defendants are premised upon the law of negligence of the State of New York and not under the Labor Management Relations Act, 29 U.S.C. § 141 *et seq.*, this Court should consider remanding this action to the state court because it had been improvidently removed therefrom. *See Helton v. Hake,* 386 F.Supp. 1027 (W.D.Mo. 1974). However the very bases for plain-

---

1. The 1978 Memorandum for local joint committees on health and safety and provided in pertinent part:

"The Local Committees shall * * * make a health and safety inspection once each two weeks. * * *

\* \* \* \* \* \*

"When either member of the Local Committee has a reasonable basis for concluding that a condition involving imminent danger exists, relevant information shall be immediately communicated to the co-committee member so that

joint investigation can be carried out immediately and necessary or desirable recommendations made. Upon joint agreement, the machine or operation may be taken out of service to perform any and all corrective action.

\* \* \* \* \* \*

" * * * The District Committeeman's duties still remain, to search out problems that represent a hazard to the employes [sic] in his district and to secure correction of these problems. * * * "

(Pages 15, 20 & 22 of the 1978 Memorandum.)

tiffs' causes of action against the union defendants are documents connected with the 1976 cba negotiations between GM and these defendants. Plaintiffs may not rely on the terms of these documents to impute some form of due care on the parts of the union defendants and then attempt to have the unions' enforcement *vel non* of the "agreement" determined pursuant to state law regarding negligence. Inasmuch as plaintiffs' claims against the union defendants flow from documents connected with the cba negotiations and the parties' agreement to cooperate to maintain and improve the safety of the working environment, the unions' obligations undertaken to benefit their members arise from and are governed by federal law. *Cf., Condon v. Local 2944, United Steelworkers, Etc.,* 683 F.2d 590, 594–596 (1st Cir.1982); *House v. Mine Safety Appliances Co.,* 417 F.Supp. 939, 944–947 (D.Id.1976). Plaintiffs' claims are not of the type which touch so tangentially upon a union's bargaining duties as to allow an independent state law claim. *See, e.g. Farmer v. United Brotherhood of Carpenters,* 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977) (intentional infliction of emotional distress); *Linn v. Plant Guard Workers,* 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966) (libel action). It is clear that federal law preempts the type of state law claim that plaintiffs have contended exists against these defendants. *Cf. Condon v. Local 2944, United Steelworkers, etc., supra; House v. Mine Safety Appliances Co., supra.*

Although plaintiffs do not allege a breach of the unions' duty of fair representation, the policy embodied in the doctrine of fair representation, as well as the evolving federal common law regarding claims by a member against his or her union for negligence, necessitates discussion of this topic.

■ Section 9(a) of the Labor Management Relations Act, 29 U.S.C. § 159(a), conferred upon unions the privilege to become exclusive bargaining agents. With this privilege came the duty of labor unions to fairly represent their members—*see Elec-*

*trical Workers v. Foust,* 442 U.S. 42, 46–47, 99 S.Ct. 2121, 2124–2125, 60 L.Ed.2d 698 (1979)—as well as an obligation to enforce fairly the provision of any collective bargaining agreement. *See Humphrey v. Moore,* 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964). This duty requires that a union represent fairly the interests of all the members of the bargaining unit and is breached only when the conduct of the union is "arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967). Because the duty of due care is not encompassed by the duty of fair representation, mere negligence does not generally constitute a breach of this duty. *See Dente v. International Org. of Masters, Mates & P., Loc. 90,* 492 F.2d 10, 12 (9th Cir.1973), *cert. denied,* 417 U.S. 910, 94 S.Ct. 2607, 41 L.Ed.2d 214 (1974); *Brough v. United Steelworkers of America, AFL–CIO,* 437 F.2d 748, 750 (1st Cir.1971); *Bazarte v. United Transportation Union,* 429 F.2d 868, 872 (3d Cir.1970). Indeed, the United States Court of Appeals for the Second Circuit has required a showing of bad faith in order to maintain successfully an action against a union for a breach of the duty of fair representation. *See Simberlund v. Long Island Rail Road Company,* 421 F.2d 1219 (2d Cir.1970).

Although it is clear that a union owes certain duties to the employees it represents and that these duties are enforceable in an action in federal court, it has been consistently recognized that an action such as one contemplated herein might render a union liable for acts or omissions beyond its control. In *Bryant v. International Union, U.M.W. of America,* 467 F.2d 1 (6th Cir.1972), *cert. denied,* 410 U.S. 930, 93 S.Ct. 1370, 35 L.Ed.2d 592 (1973), the representatives of the estates of eight miners who had been killed in an explosion brought an action against their employer and the workers' union. Those plaintiffs contended that under the applicable collective bargaining agreement, the company was obligated to conform with the standards of the Federal Mine Safety Code and that the union had undertaken to enforce

compliance with such. It was further asserted therein that both the company and the union had failed to perform their respective duties, leading to the foreseeable result that plaintiffs' decedents, as beneficiaries of the contract, had been killed as a consequence of practices which were violations of the code. Summary judgment was found to have been properly granted to the union because neither the collective bargaining agreement nor the "Safety Program" supplement to it had created any affirmative duty, the breach of which could give rise to liability on the part of the union. Although the language of the contract in issue therein was interpreted to have given the union the power to have compelled compliance with the safety program, there was nothing in such language which would have required the union to have exercised this power. The court recognized the potentially deleterious effects to federal labor policy of allowing members to pursue every choice of a union not to exercise a right it had received in a collective bargaining agreement.

"Collective bargaining agreements are literally agreements between unions and employers; the Union negotiators are intent on gaining the maximum power possible from management negotiators. Whether or not they choose to exercise all the power gained depends on a variety of situations relating to the overall employment situation in the industry. It would be a mistake of vast proportion to read every power granted the union by management as creating a corollary contract right in the employee as against the union. Such interpretation of collective bargaining agreements would simply deter unions from engaging in the unfettered give and take negotiation which lies at the heart of the collective bargaining agreement." 467 F.2d at 5.

Similarly, *Condon v. Local 2944, United Steelworkers, etc., supra,* held that a union could not be held liable for the negligent performance of a duty that it had assumed, where such duty had arisen from the safety and health provisions of a collective bargaining agreement.

In a case quite similar to the one at bar, *House v. Mine Safety Appliances Co., supra,* 417 F.Supp. 939, a complaint alleging that a union had committed a common law tort by negligently performing its duties as accident prevention representatives and enforcer of certain safety provisions was ordered dismissed. The court found that this cause of action flowed from the contractual obligations undertaken by the union to benefit its members and their working conditions and that this duty therefore arose from and was governed by federal law. The court noted that, although the collective bargaining agreement had provided that the union "shall inspect" the work areas, such language could not be utilized to impose liability upon the union.

"It has traditionally been the duty of employers to furnish a safe place of employment. * * * To permit a sanction of legal liability to accompany a union's exercise of responsibility in safety matters, together with either loss shifting or sharing, would weaken the duty of the employer at the expense of the union and its members. * * * Moreover, the result is readily apparent, if unions could be held liable in cases such as this—there would be *no* negotiation on safety matters. To impose liability on the union in a case such as this is against public policy and would seriously disrupt labor relations policy." *Id.* at 946–947.

■ Plaintiffs have cited *Helton v. Hake, supra,* to advance the proposition that unions are required to fulfill duties expressly assumed over and above the duty of fair representation. However the court in that case held that the claim of negligent enforcement of the terms of the collective bargaining agreement failed to state a federal claim under 29 U.S.C. § 185(a) and that the removed action should be remanded to state court. *Id.* at 1032–1033. Inasmuch as, as previously explained, this Court finds that the instant union defendants' duties, if any, arise from documents collateral to the cba, I decline to follow such holding. *See also Curran v. Intern. Union, Oil, Chem. & Atomic,* 582 F.Supp.

420, 423–424 (W.D.N.Y.1984) (negligence claim against union premised upon duty arising out of health and safety provisions of cba, preempted by federal law).[2]

In view of the absence of any material disputed fact and the union defendants' entitlement to judgment as a matter of law because this Court finds that the documents alluded to by plaintiffs cannot form the basis for a claim for breach of contract or negligence against defendants International Union and Local 846, these defendants' motions for summary judgment are hereby ORDERED granted.

---

**2.** Plaintiffs therein had also pleaded a claim of breach of the duty of fair representation, a claim absent here and one which would have been dismissed in any event due to defendants' assertion of the statute of limitations. *See Del-Costello v. International Broth. of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983).