465 P.2d 351

Gary S. HANSEN et al., for himself and for and on behalf of 191 other persons similarly situated, Plaintiffs and Respondents,

v.

BROTHERHOOD OF LOCOMOTIVE FIREMEN AND ENGINEMEN, and Lodge 844 of Brotherhood of Locomotive Firemen and Enginemen, Defendants and Appellants.

No. 11726.

Supreme Court of Utah.

Feb. 13, 1970.

Robert M. Yeates and Denis R. Morrill, of Mulliner, Prince & Mangum, Salt Lake City, for defendants and appellants.

C. Keith Rooker, Richard W. Giauque, and Ricardo B. Ferrari, of VanCott, Bagley, Cornwall & McCarthy, Salt Lake City, for plaintiffs and respondents.

TUCKETT, Justice:

In this action the plaintiff Gary S. Hansen and the other plaintiffs who were employees of Kennecott Copper Corporation seek to recover strike benefits which accrued to the plaintiffs during the 1967–1968 strike at Kennecott. These proceedings were commenced as a spurious class action[1] pursuant to Rule 23(a) (3), Utah Rules of Civil Procedure.

The case was tried in the court below without a jury and judgment was entered in favor of the plaintiffs. From the judgment the defendants have appealed to this court.

---

1. Salt Lake City v. Utah Lake Farmers Ass'n, 4 Utah 2d 14, 286 P.2d 773.

In the fall of 1966, the defendants commenced a campaign among the employees of Kennecott seeking to increase the membership of the defendant unions. The Brotherhood of Locomotive Firemen and Enginemen is the international union which is referred to as the Grand Lodge. Lodge 844 of Brotherhood of Locomotive Firemen and Enginemen is the local union at Kennecott. The Grand Lodge has its headquarters at Cleveland, Ohio, and has some general supervisory powers over the local unions.

The defendant unions embarked on the program of increasing their membership among the employees of Kennecott to the end that the local lodge would become the bargaining representative of Kennecott and replace the Mine, Mill and Smelter Workers Union as representative at the mine. In carrying out the organizational campaign, the Grand Lodge sent general organizers and other representatives to the area to assist in the program of recruiting new members in the defendant unions. During the campaign the defendants, through their organizers and representatives, offered to pay to new members strike benefits ranging from $90 to $150 per month depending upon the number of the member's dependents. In addition to the oral representations and offers the defendants also circulated fliers among the employees of Kennecott which stated in effect that the defendants would guarantee strike benefits to employees who joined the union regardless of whether or not the defendant union succeeded in winning the election to determine which union became the bargaining representative at the mine.

During the period from July 15, 1967, to March 29, 1968, the employees of Kennecott, including the plaintiffs, were on strike. During the course of the strike the plaintiffs continued to pay union dues, attending the meetings of the union, and served on picket lines.

A short time after the commencement of the strike, a strike payroll was prepared by the officers of the local union which included the names of the plaintiffs and which was forwarded to the Grand Lodge. After the payroll was received by the Grand Lodge the president struck from the payroll the names of the plaintiffs. The names of other members of the union who had joined the lodge prior to the 1966–67 organizational campaign were included on the payroll and were paid strike benefits, but the defendants refused to pay the plaintiffs. The court found that the defendant unions had not disqualified any of the plaintiffs from receiving strike benefits by reason of said plaintiffs receiving other earnings during the course of the strike; and that the defendants had offered no evidence to show that the plaintiffs were not entitled to the full amount of the strike benefits claimed by them. The trial court also found that the officers of the defend-

ant unions occupied a position of trust and confidence in respect to union dues collected from the members and had a duty to pay out and to administer those funds without discrimination.

The trial court concluded that the defendant unions through their authorized representatives had made offers to the plaintiffs to pay strike benefits should the plaintiffs become members of the unions. The court also concluded that the plaintiffs by becoming members of the unions accepted the offers to the end that a binding contract was formulated between each of the plaintiffs and the defendants. The defendants breached the contracts entered into and the plaintiffs are entitled to recover damages resulting from said breaches. The trial court having entered judgment in accordance with its findings and conclusions, the defendants appealed to this court claiming that the trial court committed numerous errors.

 The defendants' first contention is that findings of fact are not supported by the evidence. We are of the opinion that the evidence does support the court's finding that the plaintiffs and the defendants entered into a contractual relationship which obligated the defendants to pay strike benefits. The evidence also supports the finding that the defendants through their duly elected officers authorized the strike which was called at Kennecott.

 Secondly, the defendants contend that any representation by its organizers to pay strike benefits was ultra vires the union constitution. The trial court found on the evidence that the contracts entered into with the plaintiffs were within the provisions of the union constitution, and we find no error in the court's interpretation of that evidence. In this connection it should be noted that the defendants did in fact pay strike benefits to members of the union but that the names of the plaintiffs were stricken from the strike payroll even though the plaintiffs were members in good standing at the time.

 Thirdly, it is the defendants' contention that all of the members of the Labor Union are bound by the constitution of that organization, and that the interpretation of its provisions by the president of the union is binding on the members and also on the court. We are in accord with the notion that the members of the Labor Union are entitled to interpret the provisions of the constitution the members have adopted, but we do not agree that a union is entitled to so interpret the provisions of its constitution so as to avoid contractual obligations entered into by it.

 Fourthly, the defendants contend that it was error for the plaintiffs to circularize potential plaintiffs to join in this action against the defendants. The record indicates that this procedure was autho-

**34**

rized by the court and that it comes within the provisions of Rule 23, Utah Rules of Civil Procedure. The action taken would tend to avoid a multitude of separate actions.

Fifthly, it is contended by the defendants that the courts of the State of Utah do not have jurisdiction of the subject matter of this action as the field has been pre-empted by federal authority under the provisions of the National Labor Relations Act. This being a controversy between labor unions and members of those unions we do not consider that the case comes within the pre-emption doctrine.[2]

The defendants raise other points on appeal which we deem it unnecessary to discuss separately. Our review of the record does not reveal errors of sufficient gravity to justify a reversal. The decision of the court below is affirmed. Plaintiffs are entitled to costs.

CROCKETT, C. J., and CALLISTER, HENRIOD and ELLETT, JJ., concur.

2. Marshall v. International Longshoremen's and Warehousemen's Union, 57 Cal. 2d 781, 22 Cal.Rptr. 211, 371 P.2d 987; Linn v. United Plant Guard Workers, 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582.