Gary M. CONDON, Plaintiff-Appellant,

v.

LOCAL 2944, UNITED STEELWORKERS OF AMERICA, AFL–CIO, CLC, Defendant-Appellee.

No. 82–1030.

United States Court of Appeals, First Circuit.

Argued May 7, 1982.

Decided July 23, 1982.

Mark L. Mallory, with whom Kenneth G. Bouchard, and Law Offices of Augustine J. McDonough, P. A., Manchester, N. H., were on brief, for plaintiff-appellant.

George H. Cohen, with whom David M. Silberman, Bredhoff & Kaiser, Washington, D. C., Richard F. Upton, Upton, Sanders & Smith, Concord, N. H., Bernard Kleiman, Chicago, Ill., Lawrence S. Smith, and Ransmeier & Spellman, Concord, N. H., were on brief, for defendant-appellee.

Before CAMPBELL, BOWNES and BREYER, Circuit Judges.

BOWNES, Circuit Judge.

On September 9, 1977, plaintiff-appellant Gary M. Condon, while working as a welder for Joy Manufacturing Company (Joy), suffered severe burns when the flannel shirt he was wearing caught on fire from sparks generated during the welding process. Nearly two years later, in an attempt to augment the recovery he received under the New Hampshire Workmen's Compensation Act, he filed this action against his union, Local 2944 of the United Steelworkers of America (Local). He raised six claims, three in tort and three in contract, alleging that Local breached certain legal duties owed to him with respect to his safety, and that this breach resulted in his injuries. Four of these claims alleged a breach in tort or contract of a duty arising out of the collective bargaining agreement between Joy and Local. The remaining two alleged a breach of a duty under New Hampshire common law that, according to appellant, arose independent of the collective bargaining agreement. He appeals the district court's order granting summary judgment in favor of Local on all six counts.

At the time appellant's accident occurred, Joy was a party to a collective bargaining agreement with the United Steelworkers of America, the International Union with which Local 2944 is affiliated. Sections 18.-01–.09 of this agreement related to safety and health. Under the contract, Joy agreed "to make reasonable provisions for the safety and health of its employees at the plant," § 18.01, and to provide and maintain safety equipment and glasses, §§ 18.03–.04. The agreement also established procedures for reporting injuries, § 18.02, and provided a grievance procedure enabling employees to seek relief from job assignments that they believed to be unsafe, § 18.05. The sections pivotal to this appeal created a "joint safety committee" consisting of four union and four management representatives, § 18.-06–.07, whose "function . . . shall be to advise with the Company concerning safety and health matters but not to handle grievances." § 18.08.[1] The joint committee had

---

1. Section 18.08 provides in full as follows:
   The function of the safety committee shall be to advise with the Company concerning safety and health matters but not to handle grievances. Its function shall be to analyze existing safety practices and rules, make rec-

no authority to require Joy to take any action to reduce safety and health risks because Joy, like most employers, believed that decisions to reduce these risks had potentially major cost implications and intimately involved management's prerogatives with regard to plant operations and personnel. Management would not, therefore, agree to surrender such authority to a joint union-management committee. Affidavit of Arthur G. Cilley at 2 & 4.[2]

Appellant filed his original complaint against Local in New Hampshire Superior Court early in August of 1979. The complaint contained two counts, each predicated on the collective bargaining agreement, which, the complaint alleged, "provid[ed] for the establishment of a joint safety committee" which was "the agent of the defendant union" and which had the "duty . . . to monitor safety conditions at Joy Manufacturing Company and to advise the Company concerning safety and health matters [and] . . . to properly inspect the working premises to insure that there was sufficient fire safety equipment available if a fire emergency arosed [sic]." Count I sounded in tort, alleging that because the joint safety committee failed to ensure that there was sufficient fire safety equipment, the Local breached its duty of due care under New Hampshire law by negligently performing its duty to "monitor safety conditions." Count II, sounding in contract, claimed that appellant was a third party beneficiary of the contract between Local and Joy, and that the failure by the joint safety committee to "monitor safety conditions" constituted a breach of that contract.

Local removed Counts I and II to New Hampshire federal district court on August 6, 1979. Appellant moved to remand, and, in an effort to avoid federal jurisdiction, also moved to amend by deleting Count II. The district court granted the motion to amend but denied the motion to remand. In July 1980, seven months after remand was denied, appellant moved to reinstate Count II, which the district court granted.

In January 1981, the district court granted appellant's motion to amend his complaint by adding two counts, which, like Counts I and II, alleged tort and contract claims based upon the collective bargaining agreement. Count III alleged that the "welding machine that the plaintiff was using in the course of his employment was unsafe," and that Local breached its duty of due care in performing its asserted contractual duty to "monitor safety conditions" by failing to properly inspect the working premises for safety hazards and to remove those hazards. Count IV alleged that these same failures to act breached the contract between Local and Joy, to which appellant claimed he was a third party beneficiary.

Two weeks later, appellant filed yet another motion to amend by adding two more counts, which was granted. Count V asserted that, independent of the collective bargaining agreement, appellant had entered a contract with the Local that imposed on Local a duty to inspect the working premises, and to ensure that the equipment on the premises was in a safe operating condition and that sufficient fire safety equipment was available.[3] This count al-

---

ommendations for improvement and make recommendations for the adoption of new practices and rules, review proposed new safety programs developed by the Company and review disabling injuries which have occurred in the plant and make recommendations to prevent future recurrences.

**2.** The collective bargaining agreement was attached as an exhibit to the affidavit of Arthur G. Cilley, who was President of Local at times relevant to the issues raised herein. Cilley participated in negotiating the agreement and had

extensive experience in such bargaining negotiations.

**3.** As pointed out by Local, appellant claimed in the district court that Local had entered an express contract with him that required Local to monitor safety conditions. Appellant did not contest Local's submission of Cilley's sworn testimony that no such contract ever existed. On appeal, appellant has reformulated Count V to allege that an implied contract, not an express contract, arose, that bound Local to exercise reasonable care to protect him from

leged that Local breached this contract because the welding machine in question was defective and unsafe and because there was insufficient fire safety equipment. Count VI claimed that, independent of Local's contractual obligations, New Hampshire common law imposed on Local the same duties described in Count V, and that Local negligently failed to carry out these duties.

On November 2, 1981, Local, in accordance with the schedule established by the district court, filed a motion "to dismiss or, in the alternative, for summary judgment." On November 18, 1981, appellant filed a memorandum opposing Local's motion, in which he consented to the dismissal of Counts I–IV:

> Upon examination of the authorities cited by the defendant union in its lengthy memorandum on this Motion the plaintiff is forced to concede that with regard to all obligations of a union arising out of a collective bargaining agreement, the only duty owed to its members is that of fair representation, as a matter of federal law no general duty of due care may be imposed. For this reason the plaintiff consents to the dismissal of Counts I–IV inclusive. [citation omitted].

Having consented to the dismissal of four of his six counts, appellant attempted to salvage Counts V and VI by again seeking a remand to state court. The district court granted summary judgment for Local on all six counts. On Counts V and VI, the state law counts, the court reasoned that New Hampshire law would not impose on Local a duty of due care with regard to safety matters unless Local had the "power to monitor safety or to . . . act concurrently as to the duty legally imposed upon the employer to provide a safe workplace and safe appliances." Finding no such grant of authority by Joy to Local, the district court concluded that "there is no theory of state law to be resolved by transfer to the state court."

■ We first address appellant's contention that, as a procedural matter, the district court erred in granting summary judgment for Local on all six counts because appellant was surprised by this treatment of Local's motion; that is, appellant was not given notice and an opportunity to present additional evidence outside the pleadings, and that this prejudicially foreclosed his ability to demonstrate the existence of genuine issues of material fact. We find this argument unpersuasive. Local's original motion, filed on November 2, 1981, was styled as a motion "to dismiss or, in the alternative, for summary judgment." Local supported this motion with an affidavit, excerpts from appellant's own deposition testimony, and an extensive memorandum, all of which addressed matters well outside the pleadings. Appellant asserted in his objection to this motion, which he filed on November 9, that, in addition to filing a memorandum to support his position, he would supply "any necessary counter affidavits." A hearing was conducted roughly three weeks later on November 30. Appellant supplied no affidavits or exhibits to support his objection to Local's motion prior to the hearing or at it.

Appellant relies on *Hickey v. Arkla Indus., Inc.*, 615 F.2d 239 (5th Cir. 1980), for the proposition that, under Fed.R.Civ.P. 12(b), when matters outside the pleadings are presented to and not excluded by the district court, the court shall treat the motion as one for summary judgment, and must satisfy the notice and hearing requirements of Fed.R.Civ.P. 56(c) (ten days notice prior to hearing). *Id.* at 240. *Hickey*, however, is readily distinguishable from the case at hand. In *Hickey* "[t]he first indication plaintiff had that the trial court was considering matters outside the pleadings came when the order was issued. [citation omitted]. The first indication plaintiff had that defendant intended to rely on matters outside the pleadings came four days before the time fixed for the hearing." *Id.* Here, there was no such surprise. Appellant had ample opportunity to provide the court with any relevant information outside the plead-

unreasonable safety hazards. Brief for Appellee at 12–13 n.6. No basis for the implication is

offered other than the collective bargaining agreement itself.

ings to raise a genuine factual issue, which he expressly represented that he was prepared to do. This is not a case where the motion for summary judgment followed hard on the heels of the complaint or answer. The case had been in gestation for over two years before the motion was filed. During this time, plaintiff amended the complaint three times. He had ample opportunity to prepare for whatever motions defendant might file, and in light of the, to say the least, uncertain status of New Hampshire law in this area, a motion for summary judgment on the state law counts should have been anticipated. The district court did not err by treating Local's motion as one for summary judgment as to all six counts. *See Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 392–93 (6th Cir. 1975).

We will uphold the district court's grant of summary judgment only if, taking the record in the light most favorable to the party opposing the motion, there exists no genuine issue of material fact and Local is entitled to judgment as a matter of law. *O'Neill v. Dell Publishing Co., Inc.*, 630 F.2d 685, 686 & n.1 (1st Cir. 1980); *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir. 1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 54 (1976).

The thrust of appellant's argument as to Counts V and VI is that, under New Hampshire law, one who undertakes to fulfill a safety monitoring function, whether gratuitously or for consideration, has a duty to exercise reasonable care under the circumstances and may be held liable to a third party for failing to carry out that duty. *See Corson v. Liberty Mut. Ins. Co.*, 110 N.H. 210, 212–14, 265 A.2d 315 (1970); *Smith v. American Employers' Ins. Co.*, 102 N.H. 530, 533–34, 163 A.2d 564 (1960). According to appellant, Local undertook such a duty, and this duty arose independent of Local's obligations under the collective bargaining agreement.

The collective bargaining agreement cannot so cavalierly be pushed aside. Without the collective bargaining agreement, there would be neither a local union

nor a union safety committee. State law in this area, of necessity, operates in the penumbra of the National Labor Relations Act and federal law. When Congress empowered unions to bargain exclusively for all employees in a particular bargaining unit, *see* National Labor Relations Act § 9(a), 29 U.S.C. § 159(a), it subordinated individual interests to those of the unit as a whole, thereby imposing upon the unions the correlative duty of fair representation. *International Bhd. of Elec. Workers v. Foust*, 442 U.S. 42, 46, 99 S.Ct. 2121, 2124, 60 L.Ed.2d 698 (1979). This duty obligates a union to represent fairly the interests of all the members of the bargaining unit and is breached only when the conduct of the union is "arbitrary, discriminatory, or in bad faith." *Id.* at 47, 99 S.Ct. at 2125; *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967); *Farmer v. ARA Servs., Inc.*, 660 F.2d 1096, 1103 (6th Cir. 1981); *see Cannon v. Consolidated Freightways Corp.*, 524 F.2d 290, 293 (7th Cir. 1975) (to prove arbitrary or discriminatory treatment, plaintiff must show that union's conduct was intentional, invidious, and directed at him). Because due care has not been incorporated into the unions' duty of fair representation, mere negligence does not generally constitute a breach of this duty. *De Arroyo v. Sindicato De Trabajadores Packing, AFL–CIO*, 425 F.2d 281, 284 (1st Cir.), *cert. denied*, 400 U.S. 877, 91 S.Ct. 117, 27 L.Ed.2d 114 (1970).

The Supreme Court has observed that in certain areas state law may constitute an impermissible obstacle to the accomplishment of the purposes of Congress by regulating conduct that federal law has chosen to leave unregulated. In these instances, "the policy of the law is so dominated by the sweep of federal statutes that legal relations which they affect must be deemed governed by federal law having its source in those statutes, rather than by local law." *Teamsters v. Morton*, 377 U.S. 252, 261, 84 S.Ct. 1253, 1259, 12 L.Ed.2d 280 (1964); *see San Diego Unions v. Garmon*, 359 U.S. 236, 244, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959). A union's rights and duties as the exclusive

bargaining agent in carrying out its representational functions is precisely such an area; Congress has "occupied th[e] field and closed it to state regulation." *Teamsters*, 377 U.S. at 261, 84 S.Ct. at 1259 [citation omitted]; *see Vaca v. Sipes*, 386 U.S. at 177, 87 S.Ct. at 409–10.

■ We have reviewed the relatively few cases to address the specific question and conclude that a union cannot be held liable for the negligent performance of a duty it assumed that arose inextricably, as here, from the safety and health provisions of a collective bargaining agreement. In *Bryant v. International Union of UMW of America*, 467 F.2d 1 (6th Cir. 1972), *cert. denied*, 410 U.S. 930, 93 S.Ct. 1370, 35 L.Ed.2d 592 (1973), the Sixth Circuit found no breach of any duty under the collective bargaining agreement for failure to enforce company compliance with the Federal Mine Safety Code nor the duty of fair representation when the provisions of the Code had been incorporated into the agreement and when the union, unlike in the present case, had the power to compel compliance by the employer. *Id.* at 6. Similarly, in *House v. Mine Safety Appliances Co.*, 417 F.Supp. 939 (D.Idaho 1976), the Idaho district court dismissed a complaint alleging that the union committed a common-law tort by negligently performing its duties as accident prevention representative and enforcer of certain safety provisions. The *House* court reasoned that this cause of action flowed from the contractual obligations undertaken by the union to benefit its members and their working conditions, and that this duty therefore arose from and was governed by federal law. *Id.* at 944–47.[4]

Both of these cases expanded on the underlying policies, set forth by the Supreme Court in *Hines v. Anchor Motor Freight*, 424 U.S. 554, 564, 96 S.Ct. 1048, 1056, 47 L.Ed.2d 231 (1976), for refusing to impose additional duties on unions for every provision concerning safety and health that they are able to obtain from the employer in the collective bargaining process. The court in *House* explained that imposing such legal sanctions, in addition to permitting loss shifting or sharing, would weaken the duties of the employer at the expense of the union and its members, who are unable to pass on the cost of insuring such risks to the public, as can an employer. *House*, 417 F.Supp. at 946–47. The Sixth Circuit in *Bryant* reasoned that saddling unions with such liability would discourage them from seeking to include similar or more effective standards in future collective bargaining agreements. *Bryant*, 467 F.2d at 5–6.

These authorities and policies counsel that, even if a union had a duty of due care in conducting safety inspections as a matter of New Hampshire common law, federal law would preempt imposing it unless it could be shown to arise wholly outside the ambit of those obligations circumscribed by a union's duty of fair representation under the collective bargaining agreement: that is, unless it involved union activity that was peripheral to the concern of the applicable federal statutes and presented only a tangential or remote potential conflict with the federal regulatory scheme. This exception has applied to state law claims where the union has engaged in affirmative improper conduct independent of the collective bargaining agreement such as a union's infliction of severe emotional distress on a member by its intentional and outrageous conduct, *Farmer v. United Bhd. of Carpenters*, 430 U.S. 290, 301–02, 97 S.Ct. 1056, 1064, 51 L.Ed.2d 338 (1977), or malicious libel, *Linn v. Plant Guard Workers*, 383 U.S. 53, 63, 86 S.Ct. 657, 663, 15 L.Ed.2d 582 (1966).[5] This is obviously not such a case.

■ With this background, we turn to New Hampshire law. Although the New

---

**4.** This court has previously adverted to the potential morass of attempting to sever a common-law claim of negligence from the law of fair representation with respect to the functions of a union pursuant to safety and health provisions in a collective bargaining agreement. *See Brough v. United Steelworkers of America, AFL–CIO*, 437 F.2d 748, 749 n.1 (1st Cir. 1971).

We have found only one federal case that would not necessarily find an inextricable connection between these claims and permit a common-law suit to be filed in state court. *See Helton v. Hake*, 386 F.Supp. 1027, 1033–34 (W.D.Mo.1974).

**5.** As was pointed out in *House v. Mine Safety*

Hampshire Supreme Court has imposed on insurance companies a duty of due care in undertaking safety inspections of the plants of its employer-insureds, *Corson v. Liberty Mut. Ins. Co.*, 110 N.H. 210, 214, 265 A.2d 315 (1970); *Smith v. American Employers' Ins. Co.*, 102 N.H. 530, 533, 163 A.2d 564 (1960), several subsequent developments counterdictate extending this rule to unions who conduct similar safety inspections. First, the New Hampshire workmen's compensation statute has been amended since these decisions to prohibit suits against an employer's insurer by an injured employee who has received benefits under the statute. N.H.Rev.Stat.Ann. ch. 281:12 (Supp. 1981). Second, the New Hampshire court has subsequently held that a plaintiff-employee cannot rely upon a provision in a collective bargaining agreement between the employer and the union to obtain benefits from the union that he would be unable to obtain directly from the employer. *O'Keefe v. Associated Grocers of N.E., Inc.*, 120 N.H. 834, 836, 424 A.2d 199 (1980). This court has itself expressed doubts as to whether the rule in *Corson* and *Smith* could be applied to unions. *See Brough v. United Steelworkers of America, AFL–CIO*, 437 F.2d 748, 749 n.1 (1st Cir. 1971).[6]

■ It appears unlikely that at the present time the New Hampshire courts would impose a duty of due care on union committees making safety inspections. Regardless, however, of what the New Hampshire law is or might be, it is clear that federal law would prohibit the enforcement of such a duty unless it fell within one of

the exceptions discussed *supra*. Appellant has failed to demonstrate that any material factual issues exist as to whether Local undertook any such duty. He was afforded ample notice and opportunity to produce such evidence, if he had any. We, therefore, conclude that there is no genuine issue of material fact and that Local is entitled to judgment on all counts as a matter of law.

*Affirmed.*

---

*Appliances Co.*, 417 F.Supp. at 942–43, one state court has permitted a suit against a union for negligent maintenance of union property and for intentional torts committed by union members at a union meeting. *Marshall v. International Longshoremen's W.U., Local 6*, 57 Cal.2d 781, 22 Cal.Rptr. 211, 371 P.2d 987 (1962); *Inglis v. Operating Engineers Local Union No. 12*, 58 Cal.2d 269, 23 Cal.Rptr. 403, 373 P.2d 467 (1962). Similarly, the Utah Supreme Court has held that federal law did not preempt a class action by union members to recover contractual strike benefits from the local and grand lodges. *Hansen v. Board of Locomotive Fire. & Eng.*, 24 Utah 2d 30, 465 P.2d 351, 353 (1970). These cases appear to comport with the exceptions to federal preemption recognized by the Supreme Court. Appellant has

alleged no facts to suggest that Local committed any negligent or intentional acts that came close to those under review in the above-cited cases.

**6.** Despite appellants' amendments, federal jurisdiction was clearly established by his original complaint. *See* C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Civil* § 3722, at 570 (1976). There was thus no requirement that the case be dismissed from federal court. Moreover, on the facts presented here, there is no need to exercise a discretionary power to remand to state court, since the preemption question may properly be decided without further development of state law. *Cf. Brough*, 437 F.2d at 750.