Charles T. DIRRING, Plaintiff,

v.

LOMBARD BROTHERS, INC., et al., Defendants.

Civ. A. No. 80–781–N.

United States District Court, D. Massachusetts.

July 18, 1984.

Paul A. Manoff, Levine & Manoff, and Peter Rosenthal, Boston, Mass., for plaintiff.

Marshall Newman, Samuel Newman, Newman & Newman P.C., Boston, Mass., for Lombard Bros.

## MEMORANDUM AND ORDER

DAVID S. NELSON, District Judge.

This is an action brought by Charles Dirring against his former employer, Lombard Brothers, Inc., pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. The plaintiff claims in his amended complaint that he was discharged by the defendant in violation of a collective bargaining agreement.

Dirring was employed by Lombard as a truckdriver from approximately 1968 until January 1980. During this period, Dirring was a member of Local 25, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (the "Union"). In 1979, Lombard and the Union, as collective bargaining representative, entered into a collective bargaining agreement. This agreement governed the employment relationship between Lombard and Dirring.

The plaintiff filed this action on April 23, 1980. His complaint, as amended, is in two counts. Count I alleges that the Union breached its duty of fair representation because (1) the Union agent who represented plaintiff informed him that there was no need to have plaintiff's lawyer present at the arbitration hearing, (2) the Union agent failed to disclose a conflict of interest which existed because a relative of his became employed by Lombard prior to the hearing, and (3) the Union agent failed to cite relevant portions of the collective bargaining agreement during the proceedings before the arbitrator. Count II invokes the provisions of the National Arbitration Act, 9 U.S.C. § 10, and claims that the arbitrator exceeded his authority in making the award because his decision "did not draw its essence from the agreement." Amended Complaint at ¶ 27.

Both parties have filed cross-motions for summary judgment. In this Circuit, matters are appropriate for summary judgment when the record reveals no disputed issue of fact which is both genuine and material. *Hahn v. Sargent,* 523 F.2d 461,

464 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). After careful review of the record, I am obliged to enter judgment on behalf of the defendant Lombard on both counts.

The parties' submissions disclose the following undisputed facts. On or about January 10, 1980, the plaintiff was involved in a fight with one Arthur Mahoney, another truckdriver employed by Lombard. On January 15, 1980, the plaintiff was formally notified by his superior, Melbourne Crouse, that he had been discharged as a result of the fight. Mahoney was also discharged.

In addition to the collective bargaining agreement in effect at the time of plaintiff's discharge, Lombard employees were subject to a so-called "Book of Rules." As set forth therein, the purpose of the book was "to acquaint you (the employee) with your duties and responsibilities as professional drivers and freight handlers. It is designed to serve as a guide in your relations with the company and the shipping public." Biron Affidavit, Ex. B–2 at 1. General Rule 4 strictly forbade "fighting on company time or property." *Id.* at 2. There is no question that the plaintiff was aware of this Rule.

Nor is there any question that discharges based upon improper conduct under the Book of Rules are subject to the provisions of the collective bargaining agreement. Article 47 of the agreement provides in pertinent part that:

> The employer shall not discharge nor suspend any employee without just cause, but in respect to discharge or suspension shall give at least (1) warning notice of the complaint against such employee to the employee, in writing ... except that no warning notice need be given to an employee before he is discharged if the cause of such discharge is dishonesty or drunkeness, or recklessness resulting in serious accident while on duty, or the carrying of unauthorized passengers. The warning notice as herein provided shall not remain in effect for a period of more than nine (9) months from the date of said warning notice ...

The agreement also contains a formal grievance procedure, culminating in binding arbitration, which may be utilized by an employee who wishes to protest his discharge.

Upon receiving their termination notices, plaintiff and Mahoney filed grievances. They were both represented throughout the proceedings by Alfred Singelais, the Union's business agent. In accordance with the collective bargaining agreement, when Singelais' initial attempts to resolve the grievances failed, the Union pursued arbitration. Singelais also represented both men at their arbitration hearings. The hearings were held on the same day in March 1980, before the same arbitrator.

Prior to the hearing, the parties agree, Dirring requested that his privately retained counsel be allowed to participate in the proceedings. Singelais told him that the attorney could attend the hearing only as an observer and not as a participant. When Dirring explained this to his attorney, the attorney decided not to attend. It seems that Singelais' response to the plaintiff's request reflected relevant contractual language. The Rules of Procedure on Grievances state that "[a]rguments on the facts or merits of the case shall only be argued by a full time representative of the employer or the Union.... Attorney's [sic] will not be permitted to argue the merits on any case before the Joint Area Committee whether it be a discharge or a grievance." Biron Affidavit, Ex. 13–3, at Article V, § 1. While the plaintiff does not contest the Union's authority under this provision, he does challenge the application of the Rule to arbitration hearings. Moreover, he claims, Singelais never explained *why* the attorney's presence would not be necessary.

The thrust of the arbitrator's inquiry was whether there was "just cause" for the termination. Dirring made a statement and Singelais, in addition to cross-examining Lombard's witnesses, argued on Dirring's behalf. Each urged that although

fighting on company time and property was strictly prohibited, Dirring was only defending himself and that given his ten years of service, discharge was too harsh a remedy.

The hearing transcript indicates, and the parties agree, that no specific provisions of the collective bargaining agreement were ever mentioned or formally entered into evidence. It is also apparent that no one at the hearing, including the plaintiff and his representative, questioned Lombard's failure to send Dirring a warning notice within the nine-month period preceding the discharge.

Something else happened in that time period, however. Lombard employed one Norman McVicar as a truckdriver. McVicar was Singelais' brother-in-law. The plaintiff does not dispute that he was aware of this relationship at the time McVicar was hired, and more important, at the time he approached Singelais about representing him. Dirring Deposition, at 10–14. Nor does the plaintiff dispute the fact that he never expressed any concern about a potential conflict, either to Singelais, to the arbitrator, or to anyone else. At his deposition Dirring gave the following response:

Q: Did you see anything wrong with the fact that Singelais was representing your case at the Grievance Board while being related to McVicar who was working for Lombard?

A: I don't know. It never crossed my mind one way or the other.

Dirring Deposition, at 14.

The combination of the foregoing facts, according to plaintiff, demonstrates that the Union breached its duty of fair representation, and in doing so, undermined the integrity of the arbitral process so that the arbitrator's award did not derive its essence from the collective bargaining agreement.

*Duty of Fair Representation*

■ As a preliminary matter, the defendant has moved for summary judgment on the basis that plaintiff's action is time-barred. Unfortunately, defendant's argu-

ment is based solely upon the Supreme Court's decision in *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981). In *Mitchell* the Court held that since Congress had not enacted a limitations period with reference to actions brought under § 301, the timeliness of a § 301 suit "is to be determined as a matter of federal law by reference to the appropriate state statute of limitations." *Id.* at 60, 101 S.Ct. at 1562, *quoting, Johnson v. Railway Express Agency*, 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975).

The Court re-evaluated its *Mitchell* decision in *DelCostello v. Intl. Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). *DelCostello* held that the applicable statute of limitations in a case such as this, brought under § 301, is the six-month period prescribed in § 10(b) of the Labor Management Relations Act, 29 U.S.C. § 160(b). Recently, the First Circuit Court of Appeals ruled that *DelCostello* should be applied retroactively. *Graves v. Smith's Transfer Corp.*, 736 F.2d 819 (1st Cir.1984).

Inasmuch as Dirring received a copy of the arbitration award on March 17, 1980, and commenced this action against the employer, on April 23, 1980, he came well within the six-month limitations period. Thus, this action is not time-barred.

Lombard also argues that it is entitled to summary judgment because the plaintiff has failed to state a cause of action against the Union for breach of the duty of fair representation. Lombard is correct in articulating the standard which this Circuit has adopted in testing allegations of breach:

To have a right to contest the merits of their discharge in court, [employees] must first show that the union violated its duty of fair representation; otherwise the decision of the [arbitrator] is "final and binding." *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976). This exception to the finality rule is narrow. *Sear v. Cadillac Automobile Co. of Boston*, 654

F.2d 4, 7 (1st Cir.1981). "A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967). "A union may not arbitrarily ignore a meritorious grievance or process it in a perfunctory fashion." *Id.* at 191, 87 S.Ct. at 917. However, the fact that the grievance was meritorious does not establish a breach of duty of fair representation or entitle the grievant to escape the bar of finality imposed by the collective bargaining agreement, for "[t]he grievance process cannot be expected to be error-free." *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. at 571, 96 S.Ct. at 1059. There must be a separate showing of a union breach that "seriously undermined the integrity of the arbitral process." *Id.* at 567, 96 S.Ct. at 1058. Mere negligence of the union does not amount to such a breach. *Condon v. Local 2944, United Steelworkers of America*, 683 F.2d 590, 594–95 (1st Cir.1982).

*Early v. Eastern Transfer*, 699 F.2d 552, 555 (1st Cir.) (footnote omitted), *cert. denied*, 464 U.S. 824, 104 S.Ct. 93, 78 L.Ed.2d 100 (1983). Viewing the materials submitted by the parties in the light most favorable to the employee, I believe that he has failed to "make a sufficient showing that the union's treatment of [his grievance] lay outside 'the range of acceptable performance by a collective bargaining agent.'" *Id., quoting Hines*, 424 U.S. at 568, 96 S.Ct. at 1058.

■ The plaintiff's first contention is that his attorney should have been allowed to participate in the hearing, the Rules of Procedure on Grievances notwithstanding. Those rules, plaintiff argues, apply only to hearings before the Joint Area Committee, and not to the arbitration phase of the grievance proceedings. Thus posed, Dirring's argument presents a question of contract interpretation which is beyond the province of this Court to decide. *See United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). Apart from the applicability of the Rule, however, there remains the more general question of whether counsel's presence and participation are required in order for the Union to satisfy its duty of fair representation. Courts have not generally so held.

For example, the Fourth Circuit has stated that "[a]n arbitration hearing is not a court of law and need not be conducted like one. Neither lawyers nor strict adherence to judicial rules of evidence are necessary complements of industrial peace and stability—the ultimate goals of arbitration." *Walden v. Local 71, International Brotherhood of Teamsters*, 468 F.2d 196 (4th Cir.1972). Similarly, the Fifth Circuit has held that the fact that a union does not provide a grievant with a lawyer will not support a claim against the union. *Grovner v. Georgia-Pacific Corp.*, 625 F.2d 1289 (5th Cir.1980).[1] *Accord, Castelli v. Douglas Aircraft Co.*, 752 F.2d 1480, 1483 (9th Cir.1985).

The Supreme Court has also spoken, albeit indirectly, to the involvement of counsel in the grievance process. In *Hines*, the union told the complaining employees that they need not have counsel because the union would process their grievance. However, at the arbitration hearing the union representative presented no evidence in favor of the grievants, and the arbitrators ruled against them. After arbitration, the grievants retained their own counsel who uncovered evidence which exonerated them

---

**1.** *See also, DelCasal v. Eastern Airlines, Inc.*, 634 F.2d 295 (5th Cir.) (recognizing that the union had authority to decide under what circumstances an attorney would be provided to the grievant, but that nonunion membership was an improper basis for making the determination), *cert. denied*, 454 U.S. 892, 102 S.Ct. 386, 70 L.Ed.2d 206 (1981). I should point out that I am unpersuaded by the plaintiff's argument that these cases, and others cited by defendant Lombard, are inapposite simply because they address the question of union-supplied as opposed to privately-retained counsel. It seems to me that the source of counsel's compensation should not be solely dispositive of this issue.

of the charges upon which their discharges had been based.

The Court's focus in *Hines* was upon the employees' representation, the lack of which seriously undermined the arbitral process. In the instant case, I am not convinced that the Union's representation was, in effect, no representation at all. Singelais was an experienced union business agent who had handled "thousands" of grievances in the past. Singelais Affidavit, at ¶ 4. He cross-examined Lombard's witnesses,[2] urged the arbitrator to disregard evidence of former disciplinary action taken against Dirring, and argued very strongly in favor of reinstating the plaintiff. It is doubtful whether private counsel's making these arguments, or his presence at the hearing would have enhanced the integrity of the proceeding.

■ The plaintiff argues, however, that private counsel would have raised the fact that Lombard issued no warnings within the nine months prior to the discharge. Singelais' failure to raise this point is plaintiff's second basis for claiming a breach of the Union's duty.

This argument assumes that the discharge for fighting on company time and on company property required a warning and was not within the scope of discharges based upon "recklessness resulting in serious accident while on duty," which do not require warnings. Dirring's interpretation of the collective bargaining agreement is that the term "recklessness" as used therein refers to certain misconduct while driving. It is the only reasonable interpretation, he contends, since Lombard is a trucking company and most of its employees are drivers.

Lombard, on the other hand, argues that the term "recklessness" is broad enough to encompass fighting. The Union representative, Singelais, took the same view of the collective bargaining agreement; that is, that fighting constituted recklessness. Therefore, he considered it unnecessary to raise the notice requirement. Singelais Affidavit, at ¶ 19.

The First Circuit has held that a union does not have to share an employee's interpretation of the collective bargaining agreement, and consequently, does not breach its duty when it fails to make arguments based thereon. *Early v. Eastern Transfer*, 699 F.2d at 557. Thus Singelais was "entitled to decline to put forward an interpretation which he and his union reasonably believed was incorrect," *id.*, citing *Findley v. Jones Motor Freight, Inc.*, 639 F.2d 953, 960 (3d Cir.1981) and *Cannon v. Consolidated Freightways Corp.*, 524 F.2d 290, 294 (7th Cir.1975), especially when Dirring himself could have raised the argument when he made a statement to the arbitrator.

At most, Singelais' failure to raise the warning requirement amounted to mere negligence or a mistake in judgment for which the Union cannot be held liable. *Findley v. Jones Motor Freight, Inc.*, 639 F.2d at 960. Apart from what was arguably negligence, the Union's approach to the case was careful and adequate under the circumstances. Singelais made a full investigation, pursued the preliminary steps in the grievance process, gave Dirring notice and the opportunity to participate, mustered colorable arguments, and refuted insubstantial and irrelevant arguments by the employer.

2. The plaintiff would also have the Court find that the Union breached its duty by representing Mahoney at the same time. In his view, dual representation required separate hearings and did not permit either employee to cross-examine the other. I must reject this argument for two reasons. First of all, the Labor Law literature is replete with references to cases in which courts have upheld union representation of conflicting interests within employee ranks. Of course, the standard by which that representation is judged remains the same. That is, the union's handling of one grievance cannot be so arbitrary or discriminatory that it prejudices the other. Thus, my second reason for rejecting Dirring's argument is that given the factual background of the discharge—a very serious fight—it was entirely consistent with good faith and nonarbitrariness to hold separate hearings.

Given such handling of the grievance, I also find that the plaintiff's third basis for claiming a breach of the Union's duty, namely the conflict of interest, lacks merit. While it is true that a union may not be held liable for mere negligence or errors in judgment, it may be guilty of breach if bias or hostility influence its handling of the grievance. *Early v. Eastern Transfer*, 699 F.2d at 555–56. In this case, of course, Dirring alleges that Singelais was biased in favor of the employer, and consequently, refused his requests for a lawyer and refused to mention the notice requirement.

As indicated above, I do not find that Singelais' refusal in regard to these matters was arbitrary, nor do I think the evidence warrants a conclusion that he was motivated by bad faith or hostility toward the plaintiff. For instance, it is undisputed that there was never any hostility between Singelais and Dirring. In fact, Singelais had successfully represented Dirring in previous disputes with the employer. In addition, the plaintiff does not deny that when Singelais offered to withdraw from the case, he asked the union official to continue his representation:

> At around this time [prior to the convening of the Joint Area Committee], I heard "through the grapevine" that Dirring was not pleased with my representation at the informal meeting with Lombard's representatives. Accordingly, I contacted Dirring, informed him that there were six other business agents who were available to represent him and inquired whether he wished someone else to represent him before the Joint Area Com-

mittee. Dirring told me that he wished to be represented by me.

Singelais Affidavit, at ¶ 12.

Dirring's contention here is further weakened by his failure to have raised the issue of Singelais' alleged conflict before either the Joint Committee or the arbitrator.[3] At both hearings, the plaintiff was given the opportunity to speak on his own behalf. All the facts now argued as to Singelais' alleged bias were known to the plaintiff at the time the Joint Committee and the arbitrator heard his grievance. Yet, he failed to call the decisionmakers' attention to those facts.

The First Circuit has agreed with the generally accepted rule of arbitration that only in exceptional circumstances will a claim of personal bias or conflict of interest be entertained where it could have been raised at the hearing to which it applies. *Early v. Eastern Transfer*, 699 F.2d at 558, *citing Amalgamated Meat Cutters v. Cross Brothers Meat Packers, Inc.*, 518 F.2d 1113, 1121 & n. 19 (3d Cir.1975); *Morris v. Werner-Continental, Inc.*, 466 F.2d 1185, 1189 (6th Cir.1972), *cert. denied*, 411 U.S. 965, 93 S.Ct. 2144, 36 L.Ed.2d 685 (1973); *Cook Industries, Inc., v. C. Itoh & Co.*, 449 F.2d 106, 107–08 (2d Cir.1971), *cert. denied*, 405 U.S. 921, 92 S.Ct. 957, 30 L.Ed.2d 792 (1972); *Graphic Arts International Union v. Haddon Craftsmen, Inc.*, 489 F.Supp. 1088, 1093 (M.D.Pa.1979); *United Steelworkers of America Local 1913 v. Union Railroad Co.*, 648 F.2d 905 (3d Cir.1981).[4] The present case does not fall within the category of exceptional cases. Thus, plaintiff's claim that the Union breached its duty of fair representation must fail on all grounds.

---

**3.** Q: Did you speak to Singelai [sic] about the fact that McVicar was working for Lombard?
  ....
  Q: At any time prior to your hearing before the Grievance Board or the Arbitrator....
  A: No.
  Q: ... did you raise that point at the hearing?
  A: What do you mean?
  Q: The fact that they were related?
  A: Why would I raise the point?
  Q: Just yes or no.
  A: No.
Dirring Deposition, at 11–12.

**4.** In the *Union Railroad* case, the grievance board upheld the employee's discharge. In the aftermath, the employee made various allegations of hostility and bias on the part of the union representative. The Third Circuit noted that any objection based on these allegations had been waived by failure to raise them initially: "When the reasons supporting an objection are known beforehand, a party may not wait to make an objection ... until after an unfavorable award has been made." 648 F.2d at 913.

*Arbitrator's Decision*

■ Count II of the complaint alleges that even if the Union did not breach its duty of fair representation, the arbitrator's award should be set aside because it does not draw its essence from the collective bargaining agreement. Specifically, Dirring argues that the arbitrator failed to take into account, or indicate that he was taking notice of, the express language in the agreement requiring written warnings prior to discharge.

In reviewing this claim, I am limited by the Supreme Court's holding in *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), which was that the parties having bargained for the decision of the arbitrator on the merits, and the arbitrator having expertise concerning plant practices, a federal court must not set aside an arbitral award merely because it disagrees with the arbitrator on the merits. Nevertheless, the Court was compelled to sketch out the limits of judicial deference:

> (A)n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.

*Id.* at 597, 80 S.Ct. at 1361.

In short, it is my task to determine whether the arbitrator has resolved the grievance by considering the proper sources, but not to determine whether he has resolved the grievance correctly.

The issue before the arbitrator was whether there was just cause for the discharge. According to the plaintiff, the arbitrator obviously failed to consider the collective bargaining agreement, the notice requirement in particular, because the award neither cites nor purports to interpret *any* provision of the agreement. This

argument, however, is insufficient to set aside the arbitrator's decision.

The arbitrator had before him the "just cause" requirement which is established by the collective bargaining agreement. The provision which establishes that requirement further limits Lombard's ability to discharge by subjecting the employer to a notice requirement. In view of the sharp factual dispute over who started the fight which resulted in Dirring's discharge, whether self-defense was an exception to Lombard's rule against fighting, and whether fighting constituted recklessness, the arbitrator could not have decided the "just cause" question without also, albeit implicitly, deciding the notice question. In so deciding, it was entirely proper for him to interpret the collective bargaining agreement such that fighting fell within the definition of "recklessness," and therefore, was conduct for which no notice was required. *See Walden v. Local 71*, 468 F.2d at 197.

Dirring argues that even if the foregoing constituted the arbitrator's approach to the grievance, the award should be set aside because it does spell out the arbitrator's rationale or sources of decision. Unfortunately, the plaintiff's argument incorrectly assumes that arbitrators are required to file detailed opinions or findings of fact. The Supreme Court in *Enterprise Wheel* cautioned against outright judicial vacating of arbitrator awards because of ambiguity, incompleteness, or inconsistency, even in cases where the uncertainty relates not to the meaning of the award but to the sources of decision and, thus, ultimately to the question whether the award "draws its essence" from the agreement:

> A mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award. Arbitrators have no obligation to the court to give their reasons for an award. To require opinions free of ambiguity may lead arbitrators to play it safe by writing no supporting opinions. This would be undesirable for a well-reasoned opinion

tends to engender confidence in the integrity of the process and aids in clarifying the underlying agreement.

363 U.S. at 598, 80 S.Ct. at 1361.[5]

Although the arbitrator could certainly have been more explicit in rendering his decision, I do not find that he went beyond the essence of the collective bargaining agreement. In other words, the plaintiff has presented no evidence that the award is " 'unfounded in reason and fact,' is based on reasoning 'so palpably faulty that no judge, or group of judges, could ever conceivably have made such a ruling,' or is mistakenly based on a crucial assumption which is 'concededly a nonfact'." *Bettencourt v. Boston Edison Co.*, 560 F.2d 1045, 1050 (1st Cir.1977) (citations omitted). At most, the plaintiff has established that the case could have come out the other way, and perhaps, that there were gaps in the arbitrator's reasoning.

Inasmuch as the employee Dirring has failed to establish either that the Union breached its duty or that the arbitrator exceeded his authority, the plaintiff's motion for summary judgment is hereby DENIED and defendant Lombard's cross-motion for summary judgment is hereby ALLOWED.

SO ORDERED.

**5.** *Accord, Keay v. Eastern Airlines,* 440 F.2d 667 (1st Cir.1971); *Virgin Island Nursing Assoc. Bargaining Unit v. Schneider,* 668 F.2d 221 (3rd Cir.1981).