Barraby v. Vt. State Employees Ass'n, No. 342-6-05 Wncv (Crawford, J., Feb. 1, 2010)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT
COUNTY OF WASHINGTON

ALVIN BARRABY, JR.

v.  WASHINGTON SUPERIOR COURT
DOCKET NO.: 342-6-05 Wncv

VERMONT STATE EMPLOYEES ASSOCIATION

DECISION ON MOTION FOR SUMMARY JUDGMENT

Plaintiff Alvin Barraby, Jr., a former employee of the Department of Corrections ("DOC") and member of the Vermont State Employees Association ("VSEA"), has brought a claim against the VSEA for breach of the duty of fair representation. He has already settled the related claims which he brought against the State of Vermont.

UNDISPUTED FACTS

The facts in this case are undisputed. The following statement of undisputed facts is drawn from plaintiff's statement or, in a few cases, from documents and emails attached to defendant's statement.

In 1985, Mr. Barraby was hired by the DOC as a correctional officer. As a DOC employee, he was a member of the VSEA which functions as the union for state workers. The terms of employment between the DOC and its employees are set forth in a collective bargaining agreement.

In 2004, Mr. Barraby was employed as a Correctional Services Team Leader at the Southeast State Correctional Facility in Windsor, Vermont. His responsibilities included supervising female inmates on work release. During the winter of 2003-2004, several inmates took pornographic pictures of themselves in exchange for cigarettes while they were assigned to paint the interior of the fire station in Springfield, Vermont. Mr. Barraby was responsible for supervising these women at the time the photos were taken. Mr. Barraby denies knowledge of the "photos for cigarettes" scheme.

In March 2004, the DOC placed Mr. Barraby on paid leave during an investigation of the incident. On May 5, 2004, William Soule, superintendent of the Southeast State Correctional Facility, wrote to Mr. Barraby to state that DOC was contemplating his dismissal for disciplinary reasons. The charges against Mr. Barraby included allegations that he was having a romantic relationship with an inmate, that he was negligent in supervising the inmates at the fire station, and that he was not honest in the statements he gave the investigators.

The VSEA assigned Lucinda Kirk to represent Mr. Barraby in the disciplinary proceeding. Ms. Kirk is not an attorney although she received guidance from an attorney on the staff of the VSEA.

The first step in the disciplinary hearing was a *Louderville* hearing which was intended to provide Mr. Barraby with an opportunity to respond to the charges against him. Mr. Barraby did not attend the hearing. He claims that Ms. Kirk failed to notify him that the hearing would take place during a ten day period while he was out of town in Wisconsin. Ms. Kirk states that she notified Mr. Barraby of the hearing and that he failed to attend.

On behalf of Mr. Barraby, Ms. Kirk negotiated an agreement with DOC which permitted Mr. Barraby to resign effective June 26, 2004, with sick leave until that date. The agreement limited the information DOC would provide about Mr. Barraby:

> The State will respond to inquiries and/or reference checks regarding Grievant, by confirming that Grievant worked for the Department of Corrections from September 11, 1985 to June 26, 2004, that Grievant's salary was $22.26 per hour and that Grievant voluntarily resigned from his position as a CSTL on June 26, 2004. No other information will be given, provided that all such inquiries and/or reference checks are directed to the Department of Corrections Personnel Administrator at the Agency of Human Services Personnel Unit.

The agreement contained a separate provision which released any claims arising under the federal Age Discrimination in Employment Act. This provision included a rescission period:

> For a period of seven (7) days following the execution of this agreement, Alvin Barraby may revoke the agreement, and this agreement shall not become effective or enforceable until this revocation period has expired.

Mr. Barraby signed the agreement May 28, 2004.

On June 2, 2004, the Eagle Times in Windsor, Vermont ran a front-page story entitled "Corrections officer resigns." The story included a statement from Superintendent Soule that Mr. Barraby had resigned. Mr. Soule was quoted as stating, "It is fairly clear his resignation partially resulted from the problems associated with the work crew." Superintendent Soule identified Mr. Barraby as the work crew supervisor. The newspaper story described the events at the fire station, the subsequent resignation of a Springfield firefighter, and an investigation by the Springfield selectboard which attributed the scandal to poor supervision of the work crew. [1]

---

[1] The June 2 story was preceded by a similar story dated May 20, 2004, which was headlined "States takes its time with scandal inquiry." The earlier story quoted Superintendent Soule as identifying the work crew supervisor as the person primarily responsible for the scandal. Mr. Barraby was not identified by name.

Mr. Barraby was angered by the newspaper coverage. On June 2, 2004, he sent Ms. Kirk an email stating:

> In today's Eagle Times Bill Soule is quoted and uses my name and states that I resigned. There can not be any more of a blatant violation of the agreement. I am hereby rescinding my resignation and the agreement. I look forward to the union taking my case and renegotiating. Bill Soule has slandered me for the last time. Let's talk.

Ms. Kirk forwarded the email to Michael Casey, an attorney at VSEA with this comment:

> Hi: I don't think that DOC violated anything, and I know that they are not going to rescind his resignation so that they can get sued ! Page me when you have a minute tomorrow so we can talk about this, please. I have a feeling Butchy is not going away just yet !

On June 4, 2004, Peter Garon, an administrator at the Agency of Human Services, advised Ms. Kirk that he did not believe the news stories violated the confidentiality provision. On June 6, 2004, Ms. Kirk sent an email to Mr. Barraby stating that she would pass the matter along to the attorneys at the VSEA.

Neither Mr. Barraby nor the VSEA on his behalf exercised the "rescission" provision in the agreement or filed a grievance with the DOC concerning the newspaper interviews. Mr. Barraby's employment terminated pursuant to the agreement at the end of June 2004.

## ANALYSIS

The parties agree that Mr. Barraby's claim against the VSEA is for breach of the duty of fair representation. Plaintiff states in his memorandum:

> The VSEA owes a duty of fair representation that extends to all members of any [collective bargaining agreement] which the VSEA represents. … A union breaches its duty of fair representation only when its conduct toward a bargaining unit member is arbitrary, discriminatory, or in bad faith. … If the VSEA acted in an arbitrary or discriminatory manner toward Mr. Barraby, or acted in bad faith with respect to Mr.Barraby, it violated its duty of fair representation.

Plaintiff's memorandum. in opposition to motion for summary judgment at 10. The VSEA argues that summary judgment is appropriate for    reasons:

1. Plaintiff failed to exhaust his collectively bargained-for administrative remedies by filing a grievance with the DOC concerning the alleged violation of the confidentiality provision in the settlement agreement;

2. There is insufficient evidence of arbitrary or discriminatory actions or bad faith on the part of the VSEA.

The other bases for the defendant's motion – that no cause of action exists against a union for breach of contract or for negligence – are implicitly conceded by the plaintiff who clearly identifies breach of the duty of fair representation as the basis for his legal claim. The case law unequivocally supports VSEA's position that members cannot sue their own union for negligence or breach of contract (except under conditions not present here), and the plaintiff does not contest this assertion. See *Duerr v. Minnesota Min. and Mfg. Co.*, 101 F.Supp. 2d 1057 (N.D. Ill. 2000)(claim against union limited to breach of duty of fair representation); *Curran v. International Union*, 582 F.Supp. 420, 422 (W.D.N.Y. 1984)(duty of fair representation defines the obligation of the union to its members.)

### I. Failure to exhaust remedies arising under the CBA

Defendant claims that Mr. Barraby's failure to file a grievance under the collective bargaining agreement bars any claim against the union for failing to do the same thing. The argument is circular. Mr. Barraby's position is that he relied on the VSEA to act on his behalf and, specifically, to file a grievance seeking rescission of the settlement agreement. He claims that the DOC and the VSEA acted together to defeat his effort to enforce the confidentiality provision. The VSEA argues that filing such a grievance is a precondition to filing a claim of fair representation.

> If, as Plaintiff alleges, the DOC failed to accept his revocation and subsequently ended his employment, then Plaintiff had an obligation under the exhaustion of administrative remedies requirement to file a grievance to the terms of the CBA before filing this action. Plaintiff did no such thing. Thus, the VSEA was not given the opportunity to represent Plaintiff. (citations omitted).

Defendant's Memo. at 8. Reduced to its simplest terms, the argument is that Mr. Barraby cannot sue the VSEA for failing to take steps to represent him because he should have taken the same steps himself.

The cases which develop the requirement of exhaustion of contractual remedies before suit stop short of such a broad defense. In *Vaca v. Sipes*, 386 U.S. 171 (1967), the U.S. Supreme Court recognized an exception to the general rule of exhaustion of remedies in cases brought against employers.

> …[T]he wrongfully discharged employee may bring an action against his employer in the face of a defense based upon the failure to exhaust contractual remedies, provided the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance.

*Id*, 386 U.S. at 184.

### II. Breach of the Duty of Fair Representation

4

Whether Mr. Barraby can prove a breach a duty of fair representation is a factual issue. Mr. Barraby points to emails from the union representative which are dismissive and faintly derogatory in tone as evidence that the union and the employer colluded to prevent Mr. Barraby's claim of breach of the confidentiality agreement from going forward. The union claims that it was up to Mr. Barraby to file a grievance and give the union an opportunity to represent him.

The legal standard for a breach of the duty of fair representation is proof of conduct which is arbitrary, discriminatory or in bad faith. *Ploof v. Village of Enosburg Falls*, 147 Vt. 196 (1986). In this case, the claim is essentially one of bad faith. The union describes this as a subjective standard requiring proof of fraudulent, deceitful or dishonest action. See *Sim v. New York Mailers' Union No. 6*, 166 F.3d 465, 472 (2d Cir. 1999).

The court is unable to determine as a matter of law that the union acted in good faith in choosing not to advocate for Mr. Barraby after he expressed his concern about the newspaper interview. A letter or email stating that the union would not be pursuing the case further with some word of explanation would have cleared the air and let Mr. Barraby know what steps he could take on his own. Instead, the employer and the union corresponded privately about the case. Then the union let it drop. There may be an entirely valid explanation for this behavior. It will require a trial to determine whether Mr. Barraby can meet the high standard of proof of arbitrary, discriminatory or bad faith conduct.

## CONCLUSION

For these reasons, the court denies the motion for summary judgment with respect to the claim of breach of the duty of fair representation. The motion is granted with respect to the claims for breach of contract and for negligence.

Dated:

_____
Geoffrey Crawford,
Superior Court Judge

5